STATE of Wisconsin, Plaintiff-Appellant,

v.

Adam M. BLACKMAN,
Defendant-Respondent.†

Court of Appeals

*No. 2015AP450–CR. Submitted on briefs April 8,
2016.—Delivered August 3, 2016.*

2016 WI App 69

† Petition for Review filed.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Michael C. Sanders*, assistant attorney general, and *Brad D. Schimel*, attorney general.

On behalf of the defendant-respondent, the cause was submitted on the briefs of *Chad A. Lanning* of *Lubar & Lanning, LLC*, West Bend and *Dennis M. Melowski* of *Melowski & Associates, LLC*, Sheboygan.

Before Reilly, P.J., Gundrum and Hagedorn, JJ.

¶ 1. REILLY, P.J.   The State appeals from an order of the circuit court granting Adam M. Blackman's motion to suppress blood test evidence obtained under Wisconsin's implied consent law. WISCONSIN STAT. § 343.305(3)(ar)2. (2013–14)[1] authorizes law enforcement to request a blood, breath, or urine sample from a driver involved in an accident that causes death or great bodily harm if the officer has reason to believe the driver violated a traffic law. Blackman was in-

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

volved in an accident when he turned left in front of an oncoming bicyclist and was asked for a sample of his blood per the implied consent law. Blackman was correctly informed that if he withdrew his consent, his license would be statutorily revoked. Blackman consented and provided a sample which revealed a BAC of .10 percent.

¶ 2. Blackman moved to suppress his blood test. The circuit court granted the motion, finding that Blackman's consent to the blood sample was coerced. We reverse. Blackman was not coerced to provide a sample as Blackman was never compelled to give a blood sample, rather he was given a choice: submit a sample (actual consent) or refuse to provide a sample (withdraw his consent under the implied consent law) and suffer the consequences for doing so. As the choice was Blackman's alone, there was no coercion.

## DISCUSSION

¶ 3. Wisconsin's implied consent law is a remedial statute that is to be liberally construed to facilitate the taking of tests for intoxication so as to remove drunk drivers from our highways. *State v. Spring*, 204 Wis. 2d 343, 352–53, 555 N.W.2d 384 (Ct. App. 1996). Under Wis. Stat. § 343.305(2), any person who drives or operates a motor vehicle upon the public highways of this state is deemed to have given consent to one or more tests of his or her breath, blood or urine, "when requested to do so by a law enforcement officer under sub. (3)(a) or (am) or when required to do so under sub. (3)(ar) or (b)."

¶ 4. In 2009, the legislature amended the implied consent law by creating Wis. Stat. § 343.305(3)(ar)2.,

which provides for the taking of a blood, breath, or urine sample from a driver involved in an accident that causes death or great bodily harm to a person when an officer has evidence that the driver violated a traffic law. Notably, the amendment created a statutory fact pattern which does not require evidence of impairment from alcohol or a controlled substance.[2] *See* 2009 Wis. Act 163; sec. 343.305(3)(ar)2. If a driver refuses to take a test, his or her license is statutorily revoked. Sec. 343.305(9)(a). The individual has the right to "request a hearing on the revocation within 10 days." Sec. 343.305(9)(a)4.

¶ 5. When the legislature created Wis. Stat. § 343.305(3)(ar)2., it failed to amend the language of the refusal hearing statute. The issues at a refusal hearing relevant to this appeal are statutorily limited to: 1) whether the officer had probable cause to believe the driver was under the influence of alcohol/controlled substance and 2) whether the driver was lawfully placed under arrest for an OWI-related violation.[3] *See* § 343.305(9)(a)5.a. A driver charged

---

[2] Prior to 2009 Wis. Act 163, a police officer was authorized to request that a driver submit to a test only after the driver had been arrested for an OWI-related violation or had probable cause to believe the individual was under the influence. *See* Wis. Stat. § 343.305(3)(a)-(am) (2003–04). Under the 2009 Wis. Act 163 amendments, a driver need not be arrested for an OWI-related violation or suspected of one in order for the statute to apply. Sec. 343.305(3)(ar)2.

[3] While not applicable to this decision, Wis. Stat. § 343.305(9)(a)5. also includes whether the officer complied with § 343.305(4), the Informing the Accused form, and whether the individual refused to permit the test as issues at the refusal hearing. Our supreme court has decreed that "[t]he issues at the [refusal] hearing are limited to those stated in

639

under § 343.305(3)(ar)2. should win a refusal hearing under the current statute as alcohol and an arrest for an OWI-related violation are not elements of the charge. *See State v. Padley*, 2014 WI App 65, ¶ 66 n.12, 354 Wis. 2d 545, 849 N.W.2d 867.

¶ 6. On June 22, 2013, Blackman made a left-hand turn in front of an oncoming bicycle, causing great bodily harm to the bicyclist. Fond du Lac County Sheriff's Deputy John Abler investigated the accident and concluded that Blackman failed to yield to the bicycle. Abler did not suspect and did not have probable cause to believe that Blackman was under the influence of an intoxicant at the time of the accident. Given the serious injuries to the bicyclist, he requested a blood sample from Blackman pursuant to Wis. Stat. § 343.305(3)(ar)2.

¶ 7. Abler read Blackman the Informing the Accused[4] form which includes the warning that "[i]f you refuse to take any test that this agency requests, your operating privilege will be revoked and you will be subject to other penalties." Blackman gave a sample of his blood which revealed a BAC of .10 percent. Blackman was charged with reckless driving causing great bodily harm, injury by intoxicated use of a vehicle, injury by use of a vehicle with a prohibited blood alcohol concentration, operating a motor vehicle while under the influence of an intoxicant (OWI), and operating a motor vehicle with a prohibited blood alcohol concentration. Blackman moved to suppress the results of the blood test, arguing that his consent to the blood test was coerced as the statutory scheme for

[§ 343.305(9)(a)5.]" *State v. Nordness*, 128 Wis. 2d 15, 29, 381 N.W.2d 300 (1986) (Section 343.305(9)(a)5. was formerly codified as § 343.305(3)(b)5. (1983–84)).

  [4] Wis. Stat. § 343.305(4).

refusal hearings under Wɪs. Sᴛᴀᴛ. § 343.305(9)(a)5. does not support the threatened revocation and is statutorily unenforceable.

¶ 8. The circuit court granted Blackman's motion on the theory that Blackman's consent to the blood draw was coerced. The court relied on our decision in *Padley*, 354 Wis. 2d 545, reasoning that a revocation for a refusal under Wɪs. Sᴛᴀᴛ. § 343.305(3)(ar)2. would be "statutorily unenforceable" and the circuit court would be required to reverse it. In *Padley*, we identified the "apparent disconnect between the terms of Wɪs. Sᴛᴀᴛ. § 343.305(3)(ar)2. and the statutes governing refusal hearings." *Padley*, 354 Wis. 2d 545, ¶ 66 n.12. According to Blackman, this statutory disconnect operated to mislead him and thereby coerced him into giving actual consent. The circuit court recognized that "[c]learly a motorist like Mr. Blackman would have had his revocation reversed had he refused a test and been revoked because there was no probable cause to believe impairment existed under [§] 343.305(9)(a)5.a. at the time of driving."

¶ 9. The facts in *Padley* mirror the facts in this case. Both cases involved (1) a motor vehicle accident that caused great bodily harm to a person, (2) reason to believe that the individual had violated a state or local traffic law, (3) no outward signs of impairment, (4) no probable cause to believe that the defendant had alcohol or a controlled substance in his or her system, (5) the defendant being read the Informing the Accused form requiring the defendant to choose between giving actual consent to a blood draw or being sanctioned with license revocation, (6) the defendant consenting to the blood draw, and (7) the sample revealing either an illegal substance or a prohibited BAC. *Padley*, 354 Wis. 2d 545, ¶ 1. Padley, like Blackman, also moved to

suppress the results of the blood test, arguing primarily that Wɪs. Sᴛᴀᴛ. § 343.305(3)(ar)2. was unconstitutional. *Padley*, 354 Wis. 2d 545, ¶ 2.

■

¶ 10.   The *Padley* court upheld the constitutionality of Wɪs. Sᴛᴀᴛ. § 343.305(3)(ar)2., and we agree with and are bound by that determination. As the *Padley* court explained, a driver has two choices under the implied consent law. The first is to give actual consent to the blood draw which is in accord with the "implied consent" the driver gave as a condition to operating a motor vehicle upon the public highways of Wisconsin. *See Padley*, 354 Wis. 2d 545, ¶ 26. The other choice is to withdraw implied consent (refuse) and suffer the penalty specified in the implied consent law. *Id.*, ¶ 27. A person choosing to give consent under the first option has given actual, voluntary consent. *Id.* A driver who refuses to provide a sample has made a choice to *withdraw* his or her previously given consent. *Id.*, ¶ 38; *see also State v. Neitzel*, 95 Wis. 2d 191, 203, 289 N.W.2d 828 (1980) ("The entire tenor of the implied consent law is . . . that consent has already been given and cannot be withdrawn without the imposition of the legislatively imposed sanction of mandatory suspension."). "This is plainly a choice designed to induce, but it is a choice nonetheless. And, as we have explained, offering this choice, rather than requiring a blood draw, makes all the difference." *Padley*, 354 Wis. 2d 545, ¶ 70.[5]

---

[5] The United States Supreme Court's very recent decision in *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016), addressed the propriety of implied consent laws where criminal penalties are imposed for refusing to submit to a blood or breath test. Wisconsin's implied consent law does not impose

¶ 11.  We disagree with Blackman's premise that his consent was coerced on the grounds that he would have won at a refusal hearing. The fundamental fact is that under the implied consent law, Blackman, by driving on the highway, impliedly consented to submitting a sample of his blood under the facts presented. "Impliedly consented," however, does not mean compelled. The implied consent law does not compel a blood sample as a driver has the right to refuse to give a sample. A driver may submit a sample (actual consent) or may withdraw consent (refusal) when law enforcement requests a sample. The choice is solely with the driver.

¶ 12.  The choice Blackman faced on June 22, 2013, was to give or not give a sample of his blood, and the choice was his alone. Had Blackman withdrawn his consent and refused to submit a sample of his blood, then what Abler told him was true—his license would have been statutorily revoked. The fact that Blackman could have prevailed at a refusal hearing due to the legislature's failure to amend the refusal hearing statute does not transform Blackman's freely given actual consent under Wisconsin's implied consent law into a coerced submittal.

## CONCLUSION

¶ 13.  Blackman, by choosing to give actual consent, made a voluntary choice. The choice was Blackman's alone and, as such, was not coerced.

*By the Court.*—Order reversed and cause remanded.

---

*criminal* penalties on drivers for failing to given actual consent, and therefore *Birchfield* does not impact our decision in this case.

¶ 14. Hagedorn, J. (*concurring*). I agree with the majority that Blackman consented and that his consent was not coerced. I write separately to clarify that consent under the Fourth Amendment need not be based upon a full understanding of one's rights; it need only be voluntary.

¶ 15. On some level, I am sympathetic with Blackman's claim. His argument is that the statutorily required Informing the Accused information is wrong, or at least misleading, and that this inaccuracy renders his consent coerced. His argument, however, suffers from two fundamental flaws.

¶ 16. First, as the majority explains, the Informing the Accused form is technically correct. It is incomplete and imprecise, no doubt. But it is not inaccurate. The threat of revocation was real, even if its longer term effects were in doubt.

¶ 17. Second, and more to the point, Blackman's argument that his consent was not voluntary depends on a finding of "actual coercive, improper police practices designed to overcome the resistance of a defendant." *State v. Clappes*, 136 Wis. 2d 222, 245, 401 N.W.2d 759 (1987); *see also Village of Little Chute v. Walitalo*, 2002 WI App 211, ¶ 9, 256 Wis. 2d 1032, 650 N.W.2d 891. Because the Informing the Accused form is sufficiently accurate, his consent was not based upon deceit or trickery or other improper police conduct. *See Village of Little Chute*, 256 Wis. 2d 1032, ¶ 11. The officer here simply did what the statute required him to do; his conduct in so doing can hardly be classified as improper.

¶ 18. To be sure, the legislature's warnings to citizens in Blackman's situation needs another look.

Blackman raises a legitimate gripe about the State threatening a revocation that it would have difficulty defending if challenged.

¶ 19. Even so, Blackman agreed to provide a blood sample. He is not entitled under the law to a broad understanding of all of his rights before giving consent under the Fourth Amendment. The United States Supreme Court has made clear that Fourth Amendment consent need only be voluntary, not knowing and intelligent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 241 (1973).[1] Knowing and intelligent waiver of rights is primarily applied to Constitutional rights necessary to preserve a fair trial. *Id.* at 237. This is not to say that a deceitful warning or empty threat could never render consent involuntary. It certainly could. But Blackman had no legal right to be informed of his ability to challenge the very real revocation threat. And the fact that he likely would have been successful in such a challenge does not, in my view,

---

[1] At least two of our cases have erroneously described Fourth Amendment consent as needing to be "knowing, intelligent and voluntary." We made such a statement in *State v. Padley*, 2014 WI App 65, ¶ 62, 354 Wis. 2d 545, 849 N.W.2d 867, directly quoting *State v. Giebel*, 2006 WI App 239, ¶ 18, 297 Wis. 2d 446, 724 N.W.2d 402. *Giebel's* statement was supported with a citation to a 1962 federal district court decision that predated *Schneckloth v. Bustamonte*, 412 U.S. 218, 241 (1973). The formulations in *Padley* and *Giebel* are contrary to the persuasive and authoritative decision of the U.S. Supreme Court in *Schneckloth*. Neither formulation rests on a separate construction of the Wisconsin Constitution. Even if they had, our supreme court has "consistently and routinely conformed the law of search and seizure under the Wisconsin Constitution to the law developed by the United States Supreme Court under the Fourth Amendment." *State v. Guzman*, 166 Wis. 2d 577, 586, 480 N.W.2d 446 (1992).

amount to the kind of trickery or deceit or improper police conduct necessary to transform his voluntary consent into coerced consent.