**2017 WI 39**

# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP1452-CR |
| COMPLETE TITLE: | State of Wisconsin,<br>Plaintiff-Respondent,<br>v.<br>Gary F. Lemberger,<br>Defendant-Appellant-Petitioner. |
| | REVIEW OF A DECISION OF THE COURT OF APPEALS<br>Reported at 369 Wis. 2d 224, 880 N.W.2d 183<br>(Ct. App. 2016 – Unpublished) |
| OPINION FILED: | April 20, 2017 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 17, 2017 |
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Dane |
| JUDGE: | William E. Hanrahan |
| JUSTICES: | |
| CONCURRED: | ABRAHAMSON, J. concurs, joined by BRADLEY, A. W., J. and KELLY, J. (opinion filed).<br>KELLY, J. concurs (opinion filed). |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there was a brief by *Robert J. Eddington* and *Eddington Law Office LLC.*, Milwaukee, and oral argument by *Robert J. Eddington.*

For the plaintiff-respondent the cause was argued by *Michael C. Sanders*, assistant attorney general, with whom on the brief was *Brad D. Schimel*, attorney general.

**2017 WI 39**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2015AP1452-CR
(L.C. No. 2014CT463)

STATE OF WISCONSIN : IN SUPREME COURT

---

**State of Wisconsin,**

**Plaintiff-Respondent,**

**v.**

**Gary F. Lemberger,**

**Defendant-Appellant-Petitioner.**

**FILED**

**APR 20, 2017**

Diane M. Fremgen
Clerk of Supreme Court

---

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 ANNETTE KINGSLAND ZIEGLER, J. This is a review of an unpublished decision of the court of appeals, State v. Lemberger, No. 2015AP1452-CR, unpublished slip op. (Wis. Ct. App. Apr. 14, 2016), which affirmed the Dane County circuit court's[1] judgment of conviction of defendant Gary Lemberger ("Lemberger") and order denying Lemberger's motion for postconviction relief.

---

[1] The Honorable William E. Hanrahan presided.

¶2 In 2014 Lemberger was convicted of the crime of operating a motor vehicle while intoxicated——4th offense[2] following a jury trial during which the prosecutor repeatedly referenced the fact that Lemberger had refused to submit to a breathalyzer test following his arrest for drunk driving. Postconviction, Lemberger requested a new trial, arguing that his constitutional right to the effective assistance of counsel had been violated. Lemberger claimed his trial attorney should have objected to the prosecutor's comments because Lemberger possessed a constitutional right to refuse to take a warrantless breathalyzer test such that the prosecutor was not permitted to seek an inference of guilt from the refusal. The circuit court rejected this argument and the court of appeals affirmed.

¶3 We conclude that Lemberger did not receive ineffective assistance of counsel. The law was settled at the time of Lemberger's trial that, upon his lawful arrest for drunk driving, Lemberger had no constitutional or statutory right to refuse to take the breathalyzer test, and that the State could comment at trial on Lemberger's improper refusal to take the test. Lemberger's attorney did not render ineffective assistance of counsel in failing to argue contrary to controlling precedent. Consequently, the circuit court did not erroneously exercise its discretion in denying Lemberger's

[2] See Wis. Stat. §§ 346.63(1)(a); 346.65(2)(am)4.; 343.307(1) (2013-14). All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

postconviction motion without a hearing. We affirm the decision of the court of appeals.

I. FACTUAL BACKGROUND

¶4 On April 5, 2014, at about 4:50 p.m., Officer Andrew Naylor ("Officer Naylor") of the City of Madison Police Department responded to multiple reports of an "erratic driver" on a highway in Dane County, "somebody who was yelling and swerving." Officer Naylor located the vehicle that had been described to him and followed it for about two minutes, but did not observe any unusual behavior other than the fact that "the driver had his hand out the window" and the hand "seemed to be moving in a waving manner." Officer Naylor activated his emergency lights and both vehicles pulled to the side of the road.

¶5 When Officer Naylor spoke with the vehicle's driver, Lemberger, he "immediately noticed a strong odor of intoxicants coming from [Lemberger's] breath," "saw that [Lemberger] had bloodshot as well as glassy eyes," and observed that Lemberger "was speaking with a slurred speech and speaking slowly." Additionally, Lemberger was "belligerent to a certain extent" when speaking about a driver on the road and exhibited a "pattern of up and down, from agitated to compliant one minute to the next minute," a pattern Officer Naylor "experience[d] with intoxicated people in general." Lemberger performed field sobriety tests in Officer Naylor's presence.

¶6 Officer Naylor then concluded on the evidence before him that Lemberger was operating a vehicle while impaired. He

arrested Lemberger, placed him in the back of Officer Naylor's vehicle, and read him the Informing the Accused form.[3] "[W]hen asked to submit to a chemical test," Lemberger responded "[Y]ep." Officer Naylor took Lemberger to "the intoximeter room" at the West District of the City of Madison Police Department. In the intoximeter room, Officer Naylor "conduct[ed] [a] 20-minute observation." He perceived that Lemberger "still had a strong odor of intoxicants coming from his breath" and that Lemberger's speech was slurred. Lemberger stated, contrary to his earlier representation, that "he was not going to submit to a breath test." After the 20-minute observation was complete, Officer Naylor read the Informing the Accused form to Lemberger a second time. Lemberger refused to submit to a breathalyzer test.

## II. PROCEDURAL BACKGROUND

¶7 On May 6, 2014, a criminal complaint was filed against Lemberger in Dane County circuit court charging him with operating a motor vehicle while intoxicated——4th offense, contrary to Wis. Stat. §§ 346.63(1)(a). On November 5, 2014, a refusal hearing occurred. At the end of the hearing, the circuit court concluded as follows:

> I find that the officer had probable cause to arrest the defendant and to request submission to the primary method by which this type of evidence is gathered: the breath test. The officer read the

---

[3] See, e.g., State v. Luedtke, 2015 WI 42, ¶11 & n.11, 362 Wis. 2d 1, 863 N.W.2d 592.

> Informing the Accused . . . in the police squad car. The defendant answered in the affirmative that he would take the test. However, after he was transported to the district station, he had a change of heart after the Informing the Accused was read verbatim a second time . . . .
>
> I find that under those circumstances the officer complied with what's required, that the refusal to take the test offered by the officer was improper, and the State may comment upon that during the course of trial.

¶8 Immediately following the refusal hearing, Lemberger's case was tried before a jury. During the trial the State repeatedly informed the jury that Lemberger had refused to take a breath test, arguing that Lemberger's refusal stemmed from "a guilty conscience" and constituted "proof positive that he knew he had been drinking." The circuit court also instructed the jury as to how it should consider Lemberger's refusal:

> Testimony has been received that the defendant refused to furnish a breath sample for chemical analysis. You should consider this evidence along with all other evidence in this case, giving to it the weight you decide that it's entitled to receive.[4]

The jury ultimately rendered a guilty verdict later that day. Lemberger's sentence included 12 months in jail, a 36-month revocation period, a fine, and costs. On November 6, 2014, a judgment of conviction was entered.[5]

¶9 On June 5, 2015, Lemberger filed a postconviction motion for a new trial. Lemberger contended that the State

---

[4] See also Wis JI——Criminal 2663B.

[5] On February 11, 2015, an amended judgment of conviction was entered.

"violated [his] constitutional rights at trial by seeking an inference of guilt on an element of the offense charged based on [his] exercise of his constitutional right to refuse a warrantless search in the form of a breathalyzer test" and that Lemberger "received ineffective assistance of counsel, as evident from trial counsel's failure to object to the State's comments and arguments on [his] refusal."

¶10 On June 26, 2015, the circuit court denied Lemberger's motion without a hearing, characterizing Lemberger's claim that the State had violated Lemberger's constitutional rights as "wholly unsupported by Wisconsin law." With regard to the postconviction motion itself, the circuit court added that defense counsel's "fail[ure] to address controlling legal authority" on the issue presented was "[b]reathtaking[]." On July 16, 2015, Lemberger filed a notice of appeal. On April 14, 2016, the court of appeals affirmed. Lemberger, unpublished slip op. at ¶1. The court of appeals noted that "this time, unlike in the circuit court, Lemberger briefly addresse[d] the authority identified by the circuit court as controlling on the breathalyzer issue." Id., ¶5. Nevertheless, the court of appeals concluded that Lemberger had forfeited these arguments

"by failing to preserve them before the circuit court." Id., ¶6.[6]

¶11 On May 16, 2016, Lemberger filed a petition for review in this court. On October 11, 2016, we granted the petition.

III. STANDARD OF REVIEW

¶12 This case involves a circuit court's denial, without a hearing, of a defendant's postconviction motion asserting an ineffective assistance of counsel claim. Lemberger asks this court to reverse the decision of the court of appeals and remand the case to the circuit court for a Machner hearing.[7]

¶13 "[I]f the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." State v. Allen, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. Whether the record conclusively demonstrates that the defendant is not entitled to relief is a question of law for our independent review. State v. Sulla, 2016 WI 46, ¶23, 369 Wis. 2d 225, 880 N.W.2d 659. But "[w]e review a circuit court's discretionary decisions under the

[6] The court of appeals also remarked that it likely would have affirmed even if it had addressed the merits of Lemberger's contentions because it "lack[ed] authority to apply interpretations that would appear to conflict with" controlling case law which Lemberger had failed otherwise to rebut. State v. Lemberger, No. 2015AP1452-CR, unpublished slip op. at ¶¶10-11 (Wis. Ct. App. Apr. 14, 2016) (citing Cook v. Cook, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997)).

[7] See State v. Machner, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

deferential erroneous exercise of discretion standard." Allen, 274 Wis. 2d 568, ¶9.

¶14 "A claim of ineffective assistance of counsel is a mixed question of fact and law. We will uphold the circuit court's findings of fact unless they are clearly erroneous," but "the ultimate determination of whether counsel's assistance was ineffective is a question of law, which we review de novo." State v. Carter, 2010 WI 40, ¶19, 324 Wis. 2d 640, 782 N.W.2d 695 (citations omitted).

¶15 Finally, we "review[] constitutional questions, both state and federal, de novo." State v. Lagrone, 2016 WI 26, ¶18, 368 Wis. 2d 1, 878 N.W.2d 636 (quoting State v. Schaefer, 2008 WI 25, ¶17, 308 Wis. 2d 279, 746 N.W.2d 457).[8]

## IV. ANALYSIS

¶16 "Under the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant is guaranteed the right to effective assistance of counsel." State v. Balliette, 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334 (citing Strickland v. Washington, 466 U.S. 668, 686 (1984)).

[8] The State "does not ask [us] to decide the case on the forfeiture issue" pertaining to Lemberger's failure to cite pertinent case law in his postconviction motion, and we do not address the issue further. See Phelps v. Physicians Ins. Co. of Wis. Inc., 2009 WI 74, ¶61 n.15, 319 Wis. 2d 1, 768 N.W.2d 615 ("This court has the discretion to review an issue that has been waived when it involves a question of law, has been briefed by the opposing parties, and is of sufficient public interest to merit a decision." (quoting Gumz v. N. States Power Co., 2007 WI 135, ¶73, 305 Wis. 2d 263, 742 N.W.2d 271)).

The same right is guaranteed under Article I, section 7 of the Wisconsin Constitution. E.g., State v. Domke, 2011 WI 95, ¶34, 337 Wis. 2d 268, 805 N.W.2d 364. "Counsel will be said to have provided constitutionally inadequate representation if the defendant can show that counsel performed deficiently and that such deficient performance prejudiced the defendant." Id. (citing Strickland, 466 U.S. at 687). As will be explained below, we conclude that Lemberger's attorney did not perform deficiently; consequently, we need only address that prong of the Strickland test in our analysis. See Strickland, 466 U.S. at 697.

¶17 "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688. Our application of this standard "must be highly deferential." Id. at 689. "[C]ounsel's performance need not be perfect, nor even very good, to be constitutionally adequate." State v. Shata, 2015 WI 74, ¶56, 364 Wis. 2d 63, 868 N.W.2d 93 (quoting Carter, 324 Wis. 2d 640, ¶22). Additionally, "[t]here are countless ways to provide effective assistance in any given case." Strickland, 466 U.S. at 689.

¶18 Particularly relevant to this case:

> As a general matter, "[c]ounsel's failure to raise [a] novel argument does not render his performance constitutionally ineffective." Anderson v. United States, 393 F.3d 749, 754 (8th Cir. 2005). "While the Constitution guarantees criminal defendants a competent attorney, it 'does not insure that defense counsel will recognize and raise every conceivable constitutional claim.'" Id. (quoting Engle v. Isaac, 456 U.S. 107, 134 (1982)). . . . "[F]ailure to raise

> arguments that require the resolution of unsettled legal questions generally does not render a lawyer's services 'outside the wide range of professionally competent assistance' sufficient to satisfy the Sixth Amendment." New v. United States, 652 F.3d 949, 952 (8th Cir. 2011) (quoting Strickland, 466 U.S. at 690).

Basham v. United States, 811 F.3d 1026, 1029 (8th Cir. 2016).

¶19 These considerations resolve Lemberger's ineffective assistance claim in the State's favor. Lemberger argues that the State violated his constitutional right against self-incrimination and his constitutional right to due process of law "by repeatedly asking the jury during his trial for drunk driving to infer guilt based on his refusal to submit to a warrantless breathalyzer test." However, the law was settled at the time of Lemberger's trial that, upon his lawful arrest for drunk driving, Lemberger had no constitutional or statutory right to refuse to take the breathalyzer test and that the State could comment at trial on Lemberger's improper refusal to take the test.

¶20 In State v. Albright, decided over three decades ago, a defendant refused to take a breathalyzer test after he was pulled over for drunk driving and informed of the implied consent law. State v. Albright, 98 Wis. 2d 663, 667, 298 N.W.2d 196 (Ct. App. 1980). The court of appeals explained that

> use of test refusal evidence for the purpose of showing consciousness of guilt is constitutionally permissible. The only rationale for a rule prohibiting comment on a refusal would be that there is a right to refuse the test. Wisconsin drivers have

> no constitutional right to refuse to take the breathalyzer.

Id. at 669 (footnote omitted).[9]

¶21 Albright was decided just a few years before the Supreme Court's decision in South Dakota v. Neville, 459 U.S. 553 (1983). Neville involved a defendant's refusal to comply with a blood-alcohol test under South Dakota's implied consent law. Neville, 459 U.S. at 554-59. In Neville the Supreme Court examined whether "admission into evidence of a defendant's refusal to submit to [a blood-alcohol] test . . . offend[s] the right against self incrimination." Id. at 554. It concluded that it did not. Id. The Court also addressed whether admission of such evidence violated the defendant's right to due process of law because he "was not fully warned of the consequences of refusal." Id. at 564. Again, the Court found no constitutional violation, noting that the defendant's "right to refuse the blood-alcohol test . . . is simply a matter of grace bestowed by the South Dakota Legislature." Id. at 565.

¶22 Following on the heels of Neville were a series of decisions by this court that addressed various questions related to use of refusal evidence at trial. But each time, this court approved the practice. In State v. Bolstad, for example, the

[9] We observe that earlier in the year, the court of appeals (indeed, the same three-judge panel of the court of appeals) had stated in Milwaukee County v. Proegler that "the taking of a breath sample is a search . . . within the meanings of the United States and Wisconsin Constitutions." Milwaukee Cty. v. Proegler, 95 Wis. 2d 614, 623, 291 N.W.2d 608 (Ct. App. 1980).

defendant argued that the trial court had erred in barring him from offering evidence of his reasons for refusing to submit to a blood test. State v. Bolstad, 124 Wis. 2d 576, 578, 370 N.W.2d 257 (1985). We agreed, but in so doing affirmed the general use of refusal evidence at trial:

> The state may submit the relevant and, hence, admissible evidence that Bolstad refused the test for blood alcohol content. That refusal evidence is relevant, because it makes more probable the crucial fact of intoxication, because, as State v. Albright, [98 Wis. 2d] at 668, said, "A reasonable inference from refusal to take a mandatory [blood alcohol] test is consciousness of guilt." Thus, the inference to be drawn is closely akin to an admission against interest. The inference——if one is in fact drawn——that a defendant was conscious of his guilt of intoxication tends to make more probable a fact that is of consequence in this criminal action, the fact of intoxication. Unrebutted, it could be deemed, inferentially at least, proof of intoxication.

Bolstad, 124 Wis. 2d at 578, 585.

¶23 Crandall involved a state constitutional challenge to the admission of refusal evidence at trial. State v. Crandall, 133 Wis. 2d 251, 253, 394 N.W.2d 905 (1986). The defendant contended that the due process clause of Article I, section 8 of the Wisconsin Constitution "requires that a defendant accused of operating a motor vehicle while intoxicated be warned that a refusal to submit to a chemical breath test can be used against her as evidence at trial." Id. at 252-53. In other words, the defendant was relitigating, under the Wisconsin Constitution, one of the questions presented in Neville. See id. at 254, 260.

¶24 In dismissing this argument and concluding that "the necessity of due process and fairness under the Wisconsin

Constitution [does not] require[] more safeguards or warnings than the United States Supreme Court required to satisfy federal due process in South Dakota v. Neville," we emphasized that "[i]n Wisconsin there is no constitutional or statutory right to refuse a breathalyzer test. . . . The Wisconsin implied consent statute . . . '[c]learly does not recognize a right to refuse the test.'" Id. at 255, 257, 260 (quoting Albright, 98 Wis. 2d at 671).

¶25 In Zielke we again recognized that "the fact of the defendant's refusal to submit to a test may be introduced at trial on the substantive drunk driving offense as a means of showing consciousness of guilt." State v. Zielke, 137 Wis. 2d 39, 49, 403 N.W.2d 427 (1987). Our subsequent discussion referenced Albright, Neville, Bolstad, and Crandall. Id. at 49-51.

¶26 Our decision in State v. Reitter required this court to determine "whether a police officer is required to advise a custodial defendant, charged with operating a motor vehicle while intoxicated, that the right to counsel does not apply to the administration of a chemical test under Wisconsin's implied consent statute" and "whether the due process clause of the Wisconsin Constitution imposes an affirmative duty upon police officers to advise defendants that the right to counsel does not attach to the implied consent statute." State v. Reitter, 227 Wis. 2d 213, 217, 595 N.W.2d 646 (1999).

¶27 We concluded that "officers are under no affirmative duty to advise custodial defendants about rights for which the

statute makes no provision." Id. at 218. We also concluded that "because the implied consent law creates statutory privileges, not constitutional rights, no due process violation occurs when an officer does not inform a defendant that the right to counsel does not attach to the stages preceding administration of a chemical test." Id. Relevant here, we observed with regard to the due process issue, "[T]he right of refusal, if granted by the legislature, is a statutory privilege, not a constitutional right. Unlike similar laws in other states, the Wisconsin implied consent statute . . . creates no such statutory privilege." Id. at 239 (citations omitted).[10]

¶28 More recently, in Missouri v. McNeely, a plurality of the Supreme Court noted that:

> States have a broad range of legal tools to enforce their drunk-driving laws and to secure BAC [blood alcohol concentration] evidence without undertaking warrantless nonconsensual blood draws. For example, all 50 States have adopted implied consent laws that require motorists, as a condition of operating a motor vehicle within the State, to consent to BAC testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense. Such laws impose significant consequences when a motorist withdraws consent; typically the motorist's driver's license is immediately suspended or revoked, and most States allow the motorist's refusal to take a BAC test to be

[10] State v. Albright, 98 Wis. 2d 663, 298 N.W.2d 196 (Ct. App. 1980); State v. Bolstad, 124 Wis. 2d 576, 370 N.W.2d 257 (1985); State v. Crandall, 133 Wis. 2d 251, 394 N.W.2d 905 (1986); State v. Zielke, 137 Wis. 2d 39, 403 N.W.2d 427 (1987); and State v. Reitter, 227 Wis. 2d 213, 595 N.W.2d 646 (1999), were all decided unanimously, with no separate writings.

> used as evidence against him in a subsequent criminal prosecution.

Missouri v. McNeely, 569 U.S. ___, 133 S. Ct. 1552, 1566 (2013) (plurality opinion) (emphasis added) (citations omitted). Also instructive is the Supreme Court's decision in Birchfield v. North Dakota, 579 U.S. ___, 136 S. Ct. 2160 (2016); though decided after Lemberger's trial, it confirmed that McNeely and Neville "referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply." Birchfield, 136 S. Ct. at 2185 (first citing McNeely, 133 S. Ct. at 1565-66 (plurality opinion); then citing Neville, 459 U.S. at 560).

¶29 Thus, the law was settled at the time of Lemberger's trial that, upon his lawful arrest for drunk driving, Lemberger had no constitutional or statutory right to refuse to take the breathalyzer test and that the State could comment at trial on Lemberger's improper refusal to take the test. The jury instructions used in Lemberger's case bear that conclusion out. See Wis JI——Criminal 2663B ("Testimony has been received that the defendant refused to furnish a (breath) . . . sample for chemical analysis. . . . You should consider this evidence along with all the other evidence in this case, giving to it the weight you decide it is entitled to receive.").

¶30 Lemberger argues that Albright, Bolstad, and Crandall "should be overruled and no longer followed" due to "subsequent developments in the law." In particular, Lemberger claims that decisions by the court of appeals in State v. Banks, 2010 WI App

107, 328 Wis. 2d 766, 790 N.W.2d 526; State v. Padley, 2014 WI App 65, 354 Wis. 2d 545, 849 N.W.2d 867; and State v. Blackman, 2016 WI App 69, 371 Wis. 2d 635, 886 N.W.2d 94, petition for rev. granted, 2016 WL 8230599 (table) (Dec. 19, 2016), have undermined their authority, and that in the wake of Padley and Blackman, Article I, section 11 of the Wisconsin Constitution, Wisconsin's counterpart to the Fourth Amendment to the United States Constitution, "entitled Lemberger to refuse to consent to the breath test in this case."

¶31 In Padley and Blackman the court of appeals drew a distinction between "implied consent" under the implied consent law and "actual consent." E.g., Padley, 354 Wis. 2d 545, ¶37; Blackman, 371 Wis. 2d 635, ¶10. In Banks the court of appeals concluded that the defendant's attorney had performed deficiently by failing to object when the State both "introduced testimony regarding [the defendant's] refusal to voluntarily submit a DNA sample" and "commented on [the defendant's] refusal during closing, suggesting his refusal demonstrated consciousness of guilt." Banks, 328 Wis. 2d 766, ¶25.

¶32 We need not address the merits of Lemberger's argument that these three cases somehow affect the long line of decisions of this court discussed above because the question before this court is not the substantive validity of Lemberger's argument but instead whether trial counsel was required to make it in order for Lemberger to have received constitutionally effective assistance of counsel.

¶33 The answer to this question is no. As an initial matter, the court of appeals in Banks, Padley, and Blackman would have had no authority to "overrule, modify or withdraw language from a previous supreme court case." Cook v. Cook, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997). Nor has Lemberger demonstrated that controlling law——Supreme Court case law or a statutory amendment, for example——overruled any of the cases cited in this analysis.[11] At the absolute best, then, Lemberger was faced with an unsettled legal question at trial. "We think ineffective assistance of counsel cases should be limited to situations where the law or duty is clear such that reasonable counsel should know enough to raise the issue." State v. McMahon, 186 Wis. 2d 68, 85, 519 N.W.2d 621 (Ct. App. 1994). As noted above, "failure to raise arguments that require the resolution of unsettled legal questions generally does not render a lawyer's services 'outside the wide range of professionally competent assistance' sufficient to satisfy the Sixth Amendment." Basham, 811 F.3d at 1029 (quoting New, 652 F.3d at 952).

---

[11] Lemberger seems to suggest that Missouri v. McNeely, 569 U.S. ___, 133 S. Ct. 1552 (2013), affected the law cited in this opinion. McNeely addressed only the exigent circumstances exception to the warrant requirement, which is not at issue here. See, e.g., Birchfield v. North Dakota, 579 U.S. ___, 136 S. Ct. 2160, 2174 (2016) (explaining that the McNeely Court "pointedly did not address any potential justification for warrantless testing of drunk-driving suspects except for the exception 'at issue in th[e] case,' namely, the exception for exigent circumstances" (quoting McNeely, 133 S. Ct. at 1558)).

¶34 We must add to what has already been discussed that, in the time since Lemberger's trial, the Supreme Court has clarified in Birchfield that "the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving." Birchfield, 136 S. Ct. at 2184.[12] That is, the Supreme Court has explained that "the categorical search-incident-to-arrest doctrine," whereby "the mere 'fact of the lawful arrest' justifies 'a full search of the person,'" applies to the very circumstances present in this case. Id. at 2176, 2180 (quoting United States v. Robinson, 414 U.S. 218, 235 (1973)). Thus Birchfield provides an additional reason why defendants lawfully arrested for drunk driving have "no right to refuse" a breath test. Id. at 2186.[13]

---

[12] In contrast, the Court concluded that a blood test could not "be administered as a search incident to a lawful arrest for drunk driving." Birchfield, 136 S. Ct. at 2185.

[13] Lemberger urges us to interpret Article I, section 11 of the Wisconsin Constitution to "[p]rovide [b]roader [p]rotection" than offered by the Fourth Amendment. "We generally interpret the search and seizure provision of our state constitution consistent with the United States Supreme Court's interpretation of the Fourth Amendment. State v. Tullberg, 2014 WI 134, ¶29 n.17, 359 Wis. 2d 421, 857 N.W.2d 120 (citing State v. Robinson, 2010 WI 80, ¶24 n.11, 327 Wis. 2d 302, 786 N.W.2d 463). Given that our task is "to say what the law is," Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177 (1803), Lemberger must demonstrate that the text of the Wisconsin Constitution dictates a different result than would obtain under the United States Constitution.

(continued)

¶35 The bottom line is that although Lemberger's trial counsel might have attempted to raise below the arguments Lemberger now advances, his failure to do so was not "[un]reasonable[] under prevailing professional norms" given the current state of the law. Strickland, 466 U.S. at 688. Lemberger did not receive ineffective assistance of counsel.

## V. CONCLUSION

¶36 We conclude that Lemberger did not receive ineffective assistance of counsel. The law was settled at the time of Lemberger's trial that, upon his lawful arrest for drunk driving, Lemberger had no constitutional or statutory right to refuse to take the breathalyzer test and that the State could comment at trial on Lemberger's improper refusal to take the test. Lemberger's attorney did not render ineffective assistance of counsel in failing to argue contrary to controlling precedent. Consequently, the circuit court did not erroneously exercise its discretion in denying Lemberger's

---

Lemberger's request rests largely on a handful of generalized policy arguments (for example, that Officer Naylor could have, and therefore should have, obtained a warrant, or that using different legal analyses for breath and blood tests would be confusing) that do not specifically grapple with the text of the Wisconsin Constitution or the basic legal premises supporting the search-incident-to-arrest doctrine and Wisconsin's implied consent law. We decline specifically to address and reject each of Lemberger's arguments here; suffice it to say that Lemberger does not adequately establish that Article I, section 11 possesses a different meaning than the Fourth Amendment to the United States Constitution in this context.

postconviction motion without a hearing. We affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶37 SHIRLEY S. ABRAHAMSON, J. *(concurring).* The defendant argues in the instant case that his constitutional right against self-incrimination and his constitutional right to due process of the law were violated by the prosecutor's repeated comments to the jurors that they could infer the defendant's guilt for drunk driving from his refusal to submit to a warrantless breathalyzer test.

¶38 I agree with the majority opinion that the defendant's constitutional rights were not violated by the prosecutor's comments and that the defendant did not receive ineffective assistance of counsel. I disagree with the defendant that long-standing Wisconsin law permitting comment on the defendant's refusal to submit to a breathalyzer test has been abrogated.

¶39 I write separately because the majority opinion's refrain, repeated in the instant case five times and in other decisions, that the defendant "had no constitutional or statutory right to refuse to take the breathalyzer test" states the law too broadly and veers toward being misleading. See, e.g., majority op., ¶¶3, 19, 24, 29, 36.

¶40 A more correct statement of the law, in my opinion, is that a driver who refuses to take a breath test that is lawfully administered to the driver for a drunk driving offense may suffer consequences for refusal.

¶41 With regard to constitutional rights pertaining to drunk driving, namely an individual's Fourth Amendment right to be secure against unreasonable search and seizure, a warrantless breath test and a warrantless blood test are treated

differently. The instant case involves a breath test, not a blood test.

¶42 The "Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving." Birchfield v. North Dakota, 136 S. Ct. 2160, 2184 (2016). In contrast, as a general rule, the Fourth Amendment does not permit warrantless blood draws incident to lawful drunk driving arrests. Birchfield, 136 S. Ct. at 2185.

¶43 Numerous cases demonstrate that drivers can and do refuse to take breath tests incident to arrest for drunk driving, that law enforcement officers cannot and do not force a driver to take a breath test,[1] and that the driver may suffer consequences (under state law) as a result of the refusal. Birchfield, 136 S. Ct. at 2168-69.[2]

¶44 With regard to statutory rights pertaining to drunk driving, the Wisconsin legislature has regulated breath tests for drunk drivers. See Wisconsin Implied Consent Law, Wis. Stat. § 343.305.

¶45 The Wisconsin Implied Consent Law does not empower law enforcement officers to take a sample of a driver's breath forcibly (if that is even possible). To acquire a driver's

---

[1] A breath test requires driver participation and cooperation. Birchfield v. North Dakota, 136 S. Ct. 2160, 2168 (2016).

[2] See, e.g., Birchfield, 136 S. Ct. at 2185 ("Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply.").

participation and cooperation in the administration of a breath test, the Implied Consent Law requires a law enforcement officer to advise the driver that the officer is requesting a breath test and that if the driver refuses to take the breath test, there will be adverse consequences for the driver.

¶46 The Law sets forth an "Informing the Accused Form," which a law enforcement officer is required to read verbatim to a driver. The Form is read "[a]t the time that a chemical test specimen is requested" under the Wisconsin Implied Consent Law. The text of the reading explicitly advises a driver that he or she may refuse to give a breath sample but that a refusal has consequences, including revocation of operating privileges and use of the refusal against the driver in court:

> You have either been arrested for an offense that involves driving or operating a motor vehicle while under the influence of alcohol or drugs, or both, or you are the operator of a vehicle that was involved in an accident that caused the death of, great bodily harm to, or substantial bodily harm to a person, or you are suspected of driving or being on duty time with respect to a commercial motor vehicle after consuming an intoxicating beverage.
>
> This law enforcement agency now wants to test one or more samples of your breath, blood or urine to determine the concentration of alcohol or drugs in your system. If any test shows more alcohol in your system than the law permits while driving, your operating privilege will be suspended. If you refuse to take any test that this agency requests, your operating privilege will be revoked and you will be subject to other penalties. The test results or the fact that you refused testing can be used against you in court.

Wis. Stat. § 343.305(4) (emphasis added).[3]

¶47 The State apparently agrees that under the Implied Consent Law a driver may refuse to take a breath test but that the driver suffers consequences. The State's brief explains: "[T]here is no right to refuse a breath test under the implied consent law without consequences."[4]

¶48 For the reasons set forth, I write separately.

¶49 I am authorized to state that Justices ANN WALSH BRADLEY and DANIEL KELLY join this concurring opinion.

---

[3] Other provisions of the Implied Consent Law also connote that a driver has a choice to submit to or refuse to submit to a test. See, e.g., Wis. Stat. § 343.305(5)(a) ("If the person submits to a test under this section, the officer shall direct the administering of the test."); § 343.305(9) (entitled "Refusals; Notice and Court Hearing"; directing law enforcement and judicial action when the driver refuses to take a breath test).

[4] See Brief of Plaintiff-Respondent (State of Wisconsin) at 24 (emphasis added).

The notion that a driver has a right to refuse to take a breath test and face adverse consequences is similar to the doctrine in contract law that a party to a contract has a right to breach a contract and suffer the consequences. See, e.g., Stop-N-Go of Madison, Inc. v. Uno-Ven Co., 184 F.3d 672, 680 (7th Cir. 1999) (discussing efficient breaches of contract) (citing E. Allen Farnsworth, Contracts § 12.8 at 194-95 (2d ed. 1990) ("Most courts have not infringed on the freedom to keep or break a contract traditionally afforded a party by the common law and endorsed by the notion of efficient breach.")).

¶50 DANIEL KELLY, J. *(concurring).* I join the mandate of the court and the majority opinion to the extent it is not inconsistent with Justice ABRAHAMSON's concurrence, and I also join Justice ABRAHAMSON's concurrence.