COURT OF APPEALS
DECISION
DATED AND FILED

March 4, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1185-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF1575

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

JACOB T. ANDERSON,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Waukesha County: LLOYD V. CARTER, Judge. *Affirmed*.

Before Neubauer, P.J., Gundrum, and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jacob T. Anderson appeals from a judgment of conviction entered on his plea of no contest to homicide by use of a vehicle while having a detectable amount of a restricted controlled substance in his blood. He also appeals from an order denying his motion for postconviction relief.[1] Anderson argues that the court erred in denying his motion to suppress blood evidence because the subpoena for his medical records and subsequent search warrant for his blood were unsupported by sufficient probable cause. He further contends that he is entitled to withdraw his plea because trial counsel was ineffective in failing to file a motion to suppress the blood evidence based on its retention in alleged violation of his constitutional rights. For the reasons that follow, we affirm the circuit court.

## BACKGROUND

¶2 The parties do not dispute the following pertinent facts.

¶3 Anderson was driving a work truck when he crossed over the centerline of a two-lane highway and collided with a car driven by Erin M. Schroeder. Schroeder was trapped in her car after the collision. She was not breathing and had no pulse by the time she was extricated from the vehicle. First responders tried to save Schroeder by administering life-saving measures, but she was ultimately pronounced dead on the scene.

¶4 After the collision, Anderson was taken to the hospital for a leg injury. He started drifting in and out of consciousness in the ambulance on the

---

[1] The Hon. Paul Bugenhagen, Jr. heard the motions to suppress the blood evidence and entered the judgment of conviction. The Hon. Lloyd V. Carter presided over the postconviction proceedings after Judge Bugenhagen recused himself from further proceedings.

way to the hospital. Upon Anderson's admission to the hospital, staff drew a routine sample of his blood. Police officers later asked hospital staff to retain the blood sample pending the issuance of a search warrant.

¶5 Based on a witness statement that Anderson was looking at his phone when his truck veered into the oncoming lane of traffic, he was charged with homicide by negligent operation of a motor vehicle. However, after learning that Anderson was having "pseudo-seizures" at the hospital, the State wanted to further investigate whether Anderson had suffered a medical episode that may have caused the collision. The State thus requested and obtained a subpoena duces tecum for Anderson's medical records from his hospital stay. Several days later, the State secured a warrant to obtain and analyze the blood sample taken by the hospital.

¶6 Anderson's medical records contained evidence of drug use sometime before the fatal crash. The blood sample analysis showed Anderson had amphetamine and methamphetamine in his system upon admission to the hospital. Because of this evidence, the State filed an amended information charging homicide by operation of a motor vehicle while having a detectable amount of a restricted controlled substance in his blood.

¶7 Anderson moved to suppress the medical records and blood evidence for various reasons, including arguing "the affidavits did not contain any information that would show probable cause that evidence of a crime would be

located in Mr. Anderson's blood or in his medical records."[2] The circuit court denied his suppression motions. Anderson subsequently entered a plea of no contest to the amended count. The court sentenced him to 24 years of imprisonment, comprised of 14 years of initial confinement and 10 years of extended supervision.

¶8 Anderson filed a WIS. STAT. RULE 809.30 (2023-24)[3] postconviction motion asserting ineffective assistance of counsel. He argued that an unconstitutional seizure occurred when the hospital coordinated with investigators to retain Anderson's blood prior to the existence of probable cause to test that sample, and his trial counsel were ineffective in failing to seek suppression of the blood evidence on that ground. After holding a hearing at which both trial attorneys testified, the circuit court denied Anderson's postconviction motion based on its finding that the retention of his blood was a private action, not government action. Anderson appeals.

¶9 We include additional facts below as necessary to our discussion.

## DISCUSSION

¶10 Anderson raises two issues on appeal. He first argues that the blood evidence should have been suppressed because there was insufficient probable cause on which to issue a subpoena for his medical records and a warrant for his

---

[2] Anderson filed two motions to suppress the blood evidence through two different trial attorneys. The circuit court denied both, as we state in the body of this opinion. The second motion involved a challenge to the truthfulness of statements in an affidavit that is not renewed on appeal and, therefore, we do not discuss further.

[3] All references to the Wisconsin Statutes are to the 2023-24 version.

blood sample. Next, he asserts that his trial counsel were ineffective in failing to challenge the retention of his blood as a violation of his constitutional rights. We address each argument in turn below.

## I. Suppression of Blood Evidence

¶11    Anderson first argues that the hospital's records were unlawfully obtained through the subpoena, and the subsequent search warrant was unlawful as well. According to Anderson, "[t]he primary issue is that, at its core, the affidavit [in support of the subpoena] is internally inconsistent in its attempts to contrive a mystery—as to the cause of the crash—where no such mystery truly existed." He goes on to state that a witness had reported seeing a phone near or in front of Anderson's face before the crash, thereby explaining the cause of the collision. In other words, Anderson effectively argues that the police were obligated to cease investigating the fatal collision once they had witness statements, from drivers not directly involved in the collision, that Anderson had a phone in his hand while driving. Anderson provides no relevant legal authority to support his position.

¶12    WISCONSIN STAT. § 968.135 provides in part: "Upon the request of the attorney general or a district attorney and upon a showing of probable cause under s. 968.12, a court shall issue a subpoena requiring the production of documents, as specified in s. 968.13(2)." Section 968.12, in turn, provides the standard for issuing search warrants. We review whether the district attorney made a proper showing of probable cause.

¶13    The standard for upholding an issuing judge's finding of probable cause under WIS. STAT. § 968.12 is the same as the standard under the Fourth Amendment to the United States Constitution and Article I, §11 of the Wisconsin Constitution: "the judge must have been apprised of sufficient facts to excite an

honest belief in a reasonable mind that the objects sought are linked with the commission of a crime, and that the objects sought will be found in the place to be searched. *State v. Swift*, 173 Wis. 2d 870, 883, 496 N.W.2d 713 (1993)." (citation omitted). Our review is not de novo; instead, we accord "great deference" to the issuing judge's determination that probable cause exists. *Id.*

¶14    "When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure." *Illinois v. Krull*, 480 U.S. 340, 347 (1987). The exclusionary rule, however, "is a judicially created remedy, not a right, and its application is restricted to cases where its remedial objectives will best be served." *State v. Dearborn*, 2010 WI 84, ¶35, 327 Wis. 2d 252, 786 N.W.2d 97. "[T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances, recurring or systemic negligence." *Id.*, ¶36. Therefore, courts have crafted some exceptions to the rule where exclusion of the evidence would not serve the rule's purpose.

¶15    The good faith exception to the exclusionary rule applies when "the officers conducting an illegal search 'acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment.'" *Id.*, ¶33 (quoting *United States v. Leon*, 468 U.S. 897, 918 (1984)). The exception encompasses situations in which "police officers act in objectively reasonable reliance upon [a search] warrant, which ha[s] been issued by a detached and neutral magistrate[.]" *State v. Eason*, 2001 WI 98, ¶74, 245 Wis. 2d 206, 629 N.W.2d 625. As pertinent here, the good faith exception applies if the State met its burden of showing that "the process used in obtaining the search warrant included a significant investigation and a review by either a police officer trained and knowledgeable in the

requirements of probable cause and reasonable suspicion, or a knowledgeable government attorney." *See id.*

¶16 The subpoena and search warrant in this case were each signed by a Waukesha County judge.[4] The affidavits in support of each indicated that they had been reviewed by an assistant district attorney prior to its submission. Anderson does not argue that the judges in this case were not "detached and neutral," nor does he argue that the assistant district attorney who reviewed the affidavits was not "a knowledgeable government attorney." *See id.*

¶17 Further, there is nothing in the record showing that the affidavits misled the judges with false information. Likewise, the record demonstrates that the affidavits were particularized both as to the documents to be obtained and reviewed and the sample to be obtained and tested. *See **Leon***, 468 U.S. at 923. Moreover, the facts stated in the affidavits show that law enforcement conducted "a significant investigation" and that a detective and an assistant district attorney familiar with the legal requirements of WIS. STAT. § 968.135 and a warrant application reviewed the submissions. In short, the detailed affidavits are sufficient to demonstrate "that the process used in obtaining the search warrant included a significant investigation[.]" *See **Eason***, 245 Wis. 2d 206, ¶74.

¶18 Based on our thorough review, we conclude that the record establishes that the good faith exception applies here. *See id.*, ¶¶65-74 & n.34 (remand for an evidentiary hearing to determine if good faith exception applies is unnecessary if the record establishes good faith). The State properly sought

---

[4] As noted, the subpoena was signed by the Hon. Paul Bugenhagen, Jr. The search warrant authorizing the blood testing was signed by the Hon. Maria S. Lazar.

judicial authorization to obtain the medical records from Anderson's postcollision hospitalization and the stored blood sample. "An officer's decision to obtain a warrant is *prima facie* evidence that he or she was acting in good faith." *United States v. Lickers*, 928 F.3d 609, 618 (7th Cir. 2019) (citation omitted). The police officers here acted in good faith reliance on the judicial authorizations in obtaining and reviewing the medical records and obtaining and testing the stored blood sample. Thus, even assuming, without deciding, that there was insufficient probable cause for the issuance of the subpoena and warrant, the circuit court did not err in denying Anderson's suppression motions.

## II. Ineffective Assistance of Trial Counsel

¶19 Anderson next argues that trial counsel was ineffective in failing to move to suppress the blood evidence on an additional ground; namely, "that police violated the Fourth Amendment by later directing the hospital to *retain* his blood for evidentiary purposes without a warrant." He claims that "[t]he police took an active role in directing the hospital to retain the samples[;]" "[t]here was ongoing communication between law enforcement and hospital staff to ensure Mr. Anderson's blood was retained[;]" and "[t]he hospital's compliance in holding the blood for nearly three weeks shows the primary purpose was to assist law enforcement rather than serve any medical need." He argues that trial counsel thus should have challenged the hospital's retention of the blood as a constitutional violation and seeks to withdraw his no-contest plea on this basis.

¶20 To prevail on an ineffective assistance claim, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficient performance, the defendant must point to specific acts or

omissions by counsel that are "outside the wide range of professionally competent assistance." *Id.* at 690. To demonstrate prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. If a defendant fails to make a sufficient showing on one prong of the *Strickland* test, we need not address the other. *Id.* at 697.

¶21 As we now explain, because the law is at best unsettled, trial counsel did not perform deficiently in failing to file a motion to suppress the blood evidence based on a legal theory that it had been retained by the hospital in violation of the Fourth Amendment because the hospital and the police officers engaged in a "joint endeavor" to seize and retain Anderson's blood sample. *See State v. Breitzman*, 2017 WI 100, ¶49, 378 Wis. 2d 431, 904 N.W.2d 93. According to Anderson, this means that under Wisconsin law, the seizure and subsequent retention of his blood by the hospital was not a private action, but rather was a government seizure and, as such, trial counsel should have moved to suppress the records and blood evidence as unconstitutionally seized and retained. His argument is based on a "rubric" created by Anderson's postconviction counsel that combines principles from various Wisconsin cases to present his theory that the routine blood draw and subsequent retention of the sample by the hospital on Anderson's admission constituted a government seizure because an officer asked whether the sample would be held pending issuance of a warrant.

¶22 Anderson fails to convince us that settled law supports his novel theory. Without settled law, Anderson cannot meet his burden of demonstrating that his trial counsel had a clear duty to pursue this line of investigation and offer this evidence. *See id.* To explain further, ineffective assistance of counsel claims "should be limited to situations where the law or duty is clear such that reasonable

counsel should know enough to raise the issue." *State v. Lemberger*, 2017 WI 39, ¶33, 374 Wis. 2d 617, 893 N.W.2d 232 (citation omitted). The law is not clear or settled when "there is no Wisconsin case law directly on point on the issue" and existing case law does not "present a factual situation similar enough to the facts of [the] case." *State v. Morales-Pedrosa*, 2016 WI App 38, ¶26, 369 Wis. 2d 75, 879 N.W.2d 772.

¶23 Anderson has not demonstrated that settled law supported the suppression of the evidence. He cites to no published (or, for that matter, citable unpublished) Wisconsin appellate case that has yet held that an officer's request that the hospital retain a routine blood sample for later testing in the event a warrant is issued transforms the hospital's securing the blood into a government seizure. Relatedly, he asserts that "[g]iven the unique issues pertaining to the issuance of the subpoena in this case, publication may be warranted." Anderson himself concedes that the theory on which he insists trial counsel was deficient in failing to advance presents "unique issues." Without settled law, Anderson cannot meet his burden of demonstrating that his trial counsel had a clear duty to pursue this line of investigation offer and this evidence. *See Breitzman*, 378 Wis. 2d 431, ¶49.

¶24 For all these reasons, we conclude that Anderson fails to demonstrate that counsel performed deficiently and, therefore, he cannot establish ineffective assistance of trial counsel. Accordingly, he is not entitled to withdraw his plea.

## CONCLUSION

¶25 In sum, based on the good faith exception to the exclusionary rule, we conclude that the circuit court did not erroneously deny Anderson's motion to

10

suppress. We further conclude that trial counsel was not ineffective in failing to challenge the seizure of Anderson's blood because an attorney is not ineffective for failing to advance a novel legal theory. Accordingly, we affirm the judgment of conviction and the order denying Anderson's motion for postconviction relief.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

11