SHIRLEY S. ABRAHAMSON, J.
¶ 1. This is a review of a published decision of the court of appeals reversing a decision of the Circuit Court for Fond du Lac County, Gary R. Sharpe, Judge.[1] The circuit court granted Adam M. Blackman's motion to suppress the results of a blood test obtained under Wisconsin's implied consent law, Wis. Stat. § 343.305(3)(ar)2. (2013-14).[2] The court of appeals reversed the order of the circuit court.
*344 f 2. The issue presented is whether the consequences for refusing to submit to a blood test requested under Wis. Stat. § 343.305(3)(ar)2. were misrepresented to Blackman and, if so, whether that misrepresentation rendered Blackman's consent to the blood draw coerced, that is, not freely and voluntarily given under the Fourth Amendment.[3] Furthermore, if the court concludes that Blackman's consent to the blood draw was not voluntary consent under the Fourth Amendment, the issue becomes whether the court should apply the good faith exception to the exclusionary rule and admit the evidence of the blood alcohol concentration from the blood draw.
*345 ¶ 3. For the reasons set forth, we reverse the decision of the court of appeals, affirm the suppression order of the circuit court, and decline to apply the good faith exception to the exclusionary rule in the instant case.
¶ 4. The Fourth Amendment ordinarily requires a search warrant for a blood draw unless one of the exceptions to the warrant requirement exists. Birchfield v. North Dakota, 136 S. Ct. 2160, 2173 (2016). In the instant case, the only exception to the warrant requirement at issue is whether Blackman's consent to the blood draw was given freely and voluntarily under the Fourth Amendment. When the legality of a war-rantless search is based on the consent of the defendant, that consent must be freely and voluntarily given. State v. Johnson, 2007 WI 32, ¶ 16, 299 Wis. 2d 675, 729 N.W.2d 182 (citing State v. Phillips, 218 Wis. 2d 180, 197, 577 N.W.2d 794 (1998); Bumper v. North Carolina, 391 U.S. 543, 548 (1968)).
¶ 5. Blackman submitted to a blood draw after Deputy Sheriff John Abler stated the consequences of refusing to submit to a test: Blackman (who was not suspected of a drunk-driving offense) was told that his operating privilege would be revoked if he refused to submit to a blood draw. This information was not accurate. A driver who was not suspected of a drunk-driving offense would prevail at a refusal hearing and his operating privilege would not be revoked. See Wis. Stat. § 343.305(9)(a)5.a.
¶ 6. For the reasons set forth, we conclude that the State did not prove by clear and convincing evidence that Blackman's consent to the blood draw was valid, that is, that it was freely and voluntarily given under the Fourth Amendment. Because the exclusion *346 ary rule's deterrent effect will be served in instant case by suppressing evidence of Blackman's blood test, we decline to apply the good faith exception to the exclusionary rule. The results of Blackman's blood draw are therefore suppressed.
¶ 7. Accordingly, the cause is remanded to the circuit court to reinstate its order suppressing the evidence and for further proceedings not inconsistent with the decision of this court.
¶ 8. Our decision is organized as follows:
I. We state the facts.
II. We state the standard of review.
III. Our analysis proceeds as follows:
(A) We examine Wis. Stat. § 343.305 to determine whether license revocation is a statutory consequence had Blackman refused to submit to a chemical test under Wis. Stat. § 343.305(3)(ar)2. We conclude that it is not.
(B) We determine whether Blackman's consent to the blood draw was obtained through misrepresentation, rendering his consent coerced, that is, not voluntary and free consent under the Fourth Amendment. We conclude that the consent was obtained through misrepresentation and was coerced.
(C) We determine whether to apply the good faith exception to the exclusionary rule in the instant case. We conclude that the good faith exception does not apply in the instant case.
I—<
¶ 9. For purposes of the motion to suppress evidence of Blackman's blood test, the statement of facts is brief and not in dispute.
*347 ¶ 10. At about 10 A.M. on the morning of June 22, 2013, Blackman was driving his car in a northeast direction on County Highway WH in the Town of Taycheedah, Fond du Lac County. Blackman made a left turn onto Lakeview Road. As he was turning, his car collided with a bicyclist travelling in a southwest direction on County Highway WH.
1 11. A witness at the scene explained that Blackman's car collided with the bicyclist, causing the bicyclist to "fly up in the air, over the car, and land on the roadway." The bicyclist suffered great bodily harm, including a mandibular fracture, fractures to both forearms, rib fracture, sinus fracture, a C6 vertebrae fracture, liver laceration, lung contusion, and a sub-dural hemorrhaging brain bleed.
¶ 12. Blackman and the witness both stopped to check on the bicyclist.
f 13. Shortly after the collision, Fond du Lac Deputy Sheriff John Abler was dispatched to the scene.
¶ 14. Deputy Sheriff Abler testified at the suppression hearing that he had reason to believe that Blackman may have violated a state or local traffic law by failing to yield to the bicyclist and that the bicyclist sustained great bodily harm.
¶ 15. Deputy Sheriff Abler also testified that before the blood test was administered he did not have reason to believe that Blackman was under the influence of intoxicants. Deputy Sheriff Abler testified in response to questions by the prosecutor about any signs of intoxication as follows:
Q: You noticed no odor of intoxicants coming from him?
A: That's correct.
*348 Q: You noticed no slurred speech
A: That is correct.
Q: You noticed no bloodshot eyes?
A: Correct.
Q: You noticed no glassy eyes?
A: Correct.
Q: You noticed no glassy eyes?
A: Correct.
Q: Okay. You noticed no signs with his balance or coordination?
A: I did not notice anything.
Q: You did not notice any mental impairment on his part, meaning it didn't seem like he was intoxicated or impaired in any way. Would you agree?
A: I agree.
Q: Okay. And, in fact, during your entire contact with Mr. Blackman, you never observed anything that you would have attributed to even the consumption of alcohol. Would you agree?
A: I agree.
¶ 16. Despite the absence of any signs that Blackman was intoxicated, Deputy Sheriff Abler testified that he explained to Blackman that it was "standard operating procedure for the department, when drivers are involved in accidents of a serious nature, to obtain a blood sample." Blackman went to the hospital and submitted to a blood test. Although Blackman rode *349 in Deputy Sheriff Abler's squad car to the hospital, he was not considered under arrest.
¶ 17. At the hospital, Deputy Abler read the statutory Informing the Accused Form[4] to Blackman verbatim and requested that Blackman submit to a blood draw. The test of his blood revealed an alcohol concentration of .104.
¶ 18. The State charged Blackman with multiple offenses: Reckless driving causing great bodily harm,[5] injury by intoxicated use of a vehicle,[6] injury by use of a vehicle with a prohibited alcohol concentration (PAC),[7] operating a motor vehicle while under the influence of an intoxicant (OWI) first offense,[8] and operating a motor vehicle with a PAC.[9]
¶ 19. At a pretrial suppression hearing, the circuit court suppressed the evidence obtained from the blood draw on the ground that Blackman's consent was obtained by misstatements about the consequences of his refusal to take the test and therefore his consent was coerced.
¶ 20. According to the circuit court, the Informing the Accused Form under Wis. Stat. § 343.305(4) misstates the law by declaring that the refusal to take a test under § 343.305(3)(ar)2. will lead to revocation of a driver's operating privilege. The circuit court concluded that revocation for a refusal under Wis. Stat. § 343.305(3)(ar)2. would be "statutorily unenforceable" because the issues at a refusal hearing are *350 "limited to" whether the officer had probable cause to arrest for an OWI-related offense, whether the officer complied with and read the Informing the Accused form, and whether the driver refused to permit the test.
¶ 21. Because the Deputy Sheriff had no probable cause to arrest Blackman for an OWI-related offense, the circuit court concluded that "if the statutory scheme does not support a revocation that is threatened, this Court finds that coercion has occurred." The circuit court ordered the evidence of the blood test suppressed.
¶ 22. The court of appeals reversed the circuit court's order. It ruled, relying on State v. Padley, 2014 WI App 65, 354 Wis. 2d 545, 849 N.W.2d 867, that Blackman "impliedly consented" to the blood draw by driving in Wisconsin; that Blackman had a choice to submit a sample (actual consent) or to withdraw consent (refusal); that Blackman freely chose not to withdraw consent; that the Deputy Sheriffs misstatement of the statute did not "transform Blackman's freely given actual consent under Wisconsin's implied consent law into a coerced submittal." State v. Blackman, 2016 WI App 69, ¶¶ 2, 5, 10-12, 371 Wis. 2d 635, 886 N.W.2d 94.
f 23. The concurring opinion in the court of appeals acknowledged that Blackman had a "legitimate gripe" about the form read to him. According to the concurrence, even if the form is "technically correct," it is "incomplete and imprecise, no doubt" but "not inaccurate," and the "threat of revocation was real, even if its longer term effects were in doubt."[10]
¶ 24. For the reasons set forth, we reverse the decision of the court of appeals, affirm the circuit *351 court's order, and remand the cause to the circuit court for further proceedings not inconsistent with the decision of this court.
II
f 25. We first address the standard of review. "Our review of an order granting or denying a motion to suppress evidence presents a question of constitutional fact." State v. Tullberg, 2014 WI 134, ¶ 27, 359 Wis. 2d 421, 857 N.W.2d 120. We review a question of constitutional fact under a two-step inquiry: First, we will uphold the circuit court's findings of fact unless those findings are clearly erroneous. Second, we conduct an independent, de novo analysis of the application of constitutional principles to the facts found. State v. Robinson, 2010 WI 80, ¶ 22, 327 Wis. 2d 302, 786 N.W.2d 463.
¶ 26. We are also asked to interpret and apply Wis. Stat. § 343.305, the implied consent law. Interpretation and application of a statute is generally a question of law that this court decides independently of the circuit court or court of appeals, but benefiting from their analyses. State v. Harrison, 2015 WI 5, ¶ 37, 360 Wis. 2d 246, 858 N.W.2d 372; State v. DuBose, 2005 WI 126, ¶ 16, 285 Wis. 2d 143, 699 N.W.2d 582.
I—I hH hH
¶ 27. As we stated earlier, the issue presented is whether the consequences for refusing to submit to a blood test requested under Wis. Stat. § 343.305(3)(ar)2. were misrepresented to Blackman and, if so, whether that misrepresentation rendered Blackman's consent to the blood draw coerced under the Fourth Amendment. *352 We answer both parts of this question in the affirmative.
A
f 28. We first consider the statutory provisions.
¶ 29. Under Wis. Stat. § 343.305(2), any person who drives or operates a motor vehicle upon the public highways of Wisconsin is "deemed to have given consent to one or more tests of his or her breath, blood, or urine . .. when requested to do so by a law enforcement officer under [Wis. Stat. § 343.305] sub. (3)(a) or (am) or when required to do so under sub. (3)(ar) or (b)."
¶ 30. In the instant case, Deputy Sheriff Abler requested Blackman to submit to a blood draw pursuant to Wis. Stat. § 343.305(3)(ar)2., which provides in relevant part as follows:
If a person is the operator of a vehicle that is involved in an accident that causes the death of or great bodily harm to any person and the law enforcement officer has reason to believe that the person violated any state or local traffic law, the officer may request the operator to provide one or more samples of his or her breath, blood, or urine ... .If a person refuses to take a test under this subdivision, he or she may be arrested under par. (a). (Emphasis added.)
¶ 31. Five observations about Wis. Stat. § 343.305(3)(ar)2.:
f 32. First, Wis. Stat. § 343.305(3)(ar)2. provides that if the driver refuses to take a test, he or she may be arrested.[11] Blackman's blood was drawn for a test. He was not arrested.
*353 ¶ 33. Second, Wis. Stat. § 343.305(3)(ar)2. does not provide that if the driver refuses to take a test, the driver's operating privilege will be revoked.
¶ 34. Third, under Wis. Stat. § 343.305(3)(ar)2., unlike under other provisions of § 343.305, an officer may request a blood draw without having a scintilla of a suspicion that the driver is intoxicated. The officer need have reason to believe only that a driver violated a state or local traffic law and was in an accident that caused great bodily harm.[12]
¶ 35. Fourth, the State argues that if Blackman were arrested for refusing to take a test under Wis. Stat. § 343.305(3)(ar)2., and if the officer then requested a sample under § 343.305(3)(a), and if Blackman refused to give a sample, the officer would be required to prepare a notice of intent to revoke Blackman's operating privilege by court order under § 343.305(9)(a). Thus the State argues that revocation is ultimately available under § 343.305(3)(ar)2. through §§ 343.305(3)(a) and 343.305(9)(a).[13]
*354 ¶ 36. Fifth, Wis. Stat. § 343.305(4) sets forth the text that a law enforcement officer shall read to a person from whom a test specimen is requested under Wis. Stat. § 343.305(3)(a), (am), or (ar). We refer to the text as the "Informing the Accused" form.
¶ 37. Deputy Sheriff Abler read the full text of the form to Blackman as provided in Wis. Stat. § 343.305(4) as follows:
Wis. Stat. § 343.305(4) Information. [At the time that a chemical test specimen is requested under sub. (3)(a), (am), or (ar), the law enforcement officer shall read the following to the person from whom the test specimen is requested]:[14]
You have either been arrested for an offense that involves driving or operating a motor vehicle while under the influence of alcohol or drugs, or both, or you are the operator of a vehicle that was involved in an accident that caused the death of, great bodily harm to, or substantial bodily harm to a person, or you are suspected of driving or being on duty time with respect to a commercial motor vehicle after consuming an intoxicating beverage.
*355 This law enforcement agency now wants to test one or more samples of your breath, blood or urine to determine the concentration of alcohol or drugs in your system. If any test shows more alcohol in your system than the law permits while driving, your operating privilege will be suspended. If you refuse to take any test that this agency requests, your operating privilege will be revoked and you will be subject to other penalties. The test results or the fact that you refused testing can be used against you in court.
If you take all the requested tests, you may choose to take further tests. You may take the alternative test that this law enforcement agency provides free of charge. You also may have a test conducted by a qualified person of your choice at your expense. You, however, will have to make your own arrangements for that test.
If you have a commercial driver license or were operating a commercial motor vehicle, other consequences may result from positive test results or from refusing testing, such as being placed out of service or disqualified. (Emphasis added.)
¶ 38. The form differs from Wis. Stat. § 343.305(3)(ar)(2), the statute applicable in the instant case. The form states that if a driver refuses to take any test under § 343.305(3)(ar)2., the driver's "operating privilege will be revoked" and the driver "will be subject to other penalties." The statute states only that if a driver refuses to take any test under § 343.305(3)(ar)2. the driver may be arrested. The form, therefore, does not comport with § 343.305(3)(ar)2. The proper advice to Blackman under § 343.305(3)(ar)2. was that his operating privilege would be revoked if he failed to request a refusal hearing.
f 39. Blackman contends that the text of the form applied to him is erroneous as a matter of law, *356 misrepresented the consequences if he refused a blood test, and rendered his consent to the blood test coerced consent under the Fourth Amendment.
¶ 40. We agree with Blackman that revocation of the operating privilege is unenforceable against a driver who has refused a test under Wis. Stat. § 343.305(3)(ar)2. if the driver requests a refusal hearing.
¶ 41. Wisconsin Stat. § 343.305(9)(a) provides the penalty for refusing a post-arrest request for a chemical test under § 343.305(3)(a) ; this is not the penalty for refusing to take a test under Wis. Stat. § 343.305(3)(ar)2. Section 343.305(9)(a) states in part:
If a person refuses to take a test under sub. (3)(a), the law enforcement officer shall immediately prepare a notice of intent to revoke, by court order under sub. (10), the person's operating privilege.[15]
¶ 42. Following receipt of notice of the State's intent to revoke his or her operating privilege pursuant to Wis. Stat. § 343.305(9)(a), the driver may request "a hearing on the revocation within 10 days .... If no request for a hearing is received within the *357 10-day period, the revocation commences 30 days after the notice is issued." Wis. Stat. § 343.305(9)(a) 4. See also § 343.305(10)(a).
f 43. Regarding the refusal hearing, Wis. Stat. § 343.305(9)(a)5. limits the issues as follows:
5. [The] issues of the hearing are limited to:
a. Whether the officer had probable cause to believe the person was driving or operating a motor vehicle while under the influence of alcohol, a controlled substance or a controlled substance analog or any combination of alcohol, a controlled substance and a controlled substance analog, under the influence of any other drug to a degree which renders the person incapable of safely driving, or under the combined influence of alcohol and any other drug to a degree which renders the person incapable of safely driving, having a restricted controlled substance in his or her blood, or having a prohibited alcohol concentration....
b. Whether the officer complied with sub. (4).[16]
c. Whether the person refused to permit the test.. . . (Emphasis added.)
¶ 44. Were Blackman to have had a refusal hearing, the issues would have been "limited to" the State proving (a) that the officer had probable cause to believe that the driver was driving or operating a motor vehicle "under the influence"; (b) that the officer complied with reading the Informing the Accused form set forth in § 343.305(4); and (c) that the driver refused to permit the blood test. If the State did not prove all three issues—and in the instant case, it could not *358 prove that the Deputy Sheriff had probable cause to believe that Blackman was driving or operating a motor vehicle while under the influence of alcohol— Blackman's operating privilege would not have been revoked at the refusal hearing.
¶ 45. The State challenges this interpretation and application of Wis. Stat. § 343.305.
¶ 46. The State contends that if the driver refuses a test under Wis. Stat. § 343.305(3)(ar)2., which, as we stated previously, is not an OWI-related offense, the officer can arrest the driver. On arrest, the driver comes under § 343.305(3)(a), and the officer can request the driver to submit to a blood test under Wis. Stat. § 343.305(3)(a). If the driver refuses to submit to a blood test under § 343.305(3)(a), the officer may issue a notice of intent to revoke the person's operating privilege. Wis. Stat. § 343.305(9)(a).
f 47. The State acknowledges that Deputy Sheriff Abler did not arrest Blackman, did not proceed under Wis. Stat. § 343.305(3)(a), and did not inform Blackman of each step of the process. But the State argues that the Deputy Sheriff properly informed Blackman of the end result, that is, that Blackman's operating privilege would be revoked.
¶ 48. The State further contends that Blackman would have had his operating privilege revoked at the refusal hearing because under Wis. Stat. § 343.305(9)(a)5. the only issues that a driver who refused a test under Wis. Stat. § 343.305(3)(ar)2. may raise at a refusal hearing are whether he or she was read the Informing the Accused form and whether he or she actually refused to submit to a chemical test.
f 49. The State supports this interpretation of Wis. Stat. § 343.305(9)(a)5. by relying on the legislative history of 2005 Wis. Act 413 and 2009 Wis. Act 163. *359 According to the State, the legislature did not intend to allow a person from whom a sample is requested under Wis. Stat. § 343.305(3)(ar)2. to challenge probable cause to arrest for an OWI-related offense at a refusal hearing; the legislature intended that the only issues at the refusal hearing would be those listed in § 343.305(9)(a)5.b. and c.: "whether the officer complied with sub. (4)," and "whether the person refused to permit the test." The State argues that the failure to remove an OWI-related probable cause determination from a refusal hearing under § 343.305(3)(ar)2. was a drafting error.[17]
¶ 50. An alternative interpretation, however, which we adopt, based on the text of the statute, is that the legislature's failure to amend Wis. Stat. § 343.305(9)(a) meant that it did not remove the OWI-related probable cause requirement from a refusal hearing. The text of the statute clearly provides that when an officer requests a blood test pursuant to Wis. Stat. § 343.305(3)(ar)2., the State cannot prevail at the refusal hearing because probable cause is a prerequisite to revocation of an operating license.
f 51. Because the State cannot prevail at a refusal hearing following a driver's denial of a request for a blood test under Wis. Stat. § 343.305(3)(ar)2., the *360 Deputy Sheriffs reading of the text of the "Informing the Accused" form misstated that Blackman's operating privilege will be revoked.
B
¶ 52. We next determine whether Blackman's consent to the blood draw was obtained through misrepresentation, rendering his consent coerced, that is, not voluntarily and freely given under the Fourth Amendment.
¶ 53. Blood draws are searches under the Fourth Amendment to the United States Constitution[18] and Article I, Section 11 of the Wisconsin Constitution.[19] See Birchfield, 136 S. Ct. at 2173; Schmerher v. California, 384 U.S. 757, 767 (1966). Warrantless searches are per se unreasonable and are unlawful, subject to a few "clearly delineated" exceptions. State v. Artic, 2010 WI 83, ¶ 29, 327 Wis. 2d 392, 786 N.W.2d 430.
*361 ¶ 54. In the instant case, the State relies on the consent exception to the Fourth Amendment's warrant requirement. The State must prove that consent to the blood draw was "given in fact by words, gestures, or conduct" and that the consent was "voluntary." Artic, 327 Wis. 2d 392, ¶ 30 (emphasis added). Further, the State must satisfy that burden by clear and convincing evidence. Artic, 327 Wis. 2d 392, ¶ 32; see also Bumper v. North Carolina, 391 U.S. 543, 548 (1968).[20]
¶ 55. Whether the consent was given in fact is a "question of historical fact." The finding of the circuit court will be upheld "if it is not contrary to the great weight and clear preponderance of the evidence." Artic, 327 Wis. 2d 392, ¶ 30. The circuit court found that the defendant consented to providing a blood sample but concluded that the consent was coerced.
¶ 56. If the State establishes consent in fact, the State must prove that the consent was given volun *362 tarily and freely. Schneckloth v. Bustamonte, 412 U.S. 218, 222, 225 (1973). Voluntary consent must be " 'an essentially free and unconstrained choice,' not 'the product of duress or coercion, express or implied.'" Artic, 327 Wis. 2d 392, ¶ 32 (quoting Schneckloth, 412 U.S. at 225, 227 (emphasis added)).[21]
¶ 57. The determination of voluntariness is based upon an evaluation of the totality of the surrounding circumstances. Artic, 327 Wis. 2d 392, ¶ 32. Misrepresentation is an important aspect of the totality of circumstances in the instant case.
f 58. In Birchfield, 136 S. Ct. at 2186, the Court concluded that the officer inaccurately advised the accused that the law required him to submit to a warrantless blood test. The Court remanded the cause to the state court to reevaluate the accused's consent in light of the inaccuracy.
¶ 59. In Artic, quoting State v. Phillips, 218 Wis. 2d 180, ¶ 33, 577 N.W.2d 794 (1998), the court provided multiple non-exclusive factors, including misrepresentation, to determine whether consent was given voluntarily:
(1) whether the police used deception, trickery, or misrepresentation in their dialogue with the defendant to persuade him to consent; (2) whether the police threatened or physically intimidated the defendant or "punished" him by the deprivation of something like food or sleep; (3) whether the conditions attending the request to search were congenial, non-threatening, and coop *363 erative, or the opposite; (4) how the defendant responded to the request to search; (5) what characteristics the defendant had as to age, intelligence, education, physical and emotional condition, and prior experience with the police; and (6) whether the police informed the defendant that he could refuse consent.
Artic, 327 Wis. 2d 392, ¶ 33 (citing Phillips, 218 Wis. 2d at 198-203) (emphasis added).
¶ 60. Although the most pertinent consideration in the instant case is whether misrepresentation rendered Blackman's consent coerced, we also consider the other factors described in Artic and Phillips. See Artic, 327 Wis. 2d 392, ¶ 33.
¶ 61. Here are the other considerations. This was Blackman's first OWI offense. There is nothing in the record to indicate that Blackman was physically intimidated or that Blackman was uncooperative. The Deputy Sheriff testified that Blackman's response to the request for a blood draw was that he did not specifically agree or disagree or refuse or give any indication that he was going to refuse.[22] Blackman was informed that he could refuse to take the test. He was *364 incorrectly informed that his operating privilege would be revoked if he refused the request for a blood draw.
¶ 62. We therefore address the effect of the Deputy Sheriffs "inaccuracy" or "misrepresentation" of consequences on the validity of Blackman's consent under the Fourth Amendment.
¶ 63. We conclude that because Blackman's consent was the product of misrepresentation by the State, and under the totality of the circumstances, the State has not carried its burden of proving that Blackman's consent was voluntarily and freely given under the Fourth Amendment. The State did not prove Black-man's consent was the result of "an essentially free and unconstrained choice." Schneckloth, 412 U.S. at 225.
¶ 64. In the instant case, Deputy Sheriff Abler was directed by statute to read the Informing the Accused form to Blackman. The text of the form advised Blackman that the Deputy Sheriff was requesting to test a sample of Blackman's blood. The form inaccurately advised Blackman of the penalty for refusal. The text of the form inaccurately advised *365 Blackman that his operating privilege would be revoked. This penalty did not apply to Blackman.
¶ 65. The Deputy Sheriff advised Blackman that the Department's standard operating procedure was to take blood under the circumstances in the instant case. Although the Deputy Sheriff did not tell Blackman that a blood draw would be performed without his consent, Blackman could have drawn this inference from the statement of the Department's policy and could have concluded that he had no real choice but to take a blood test.
¶ 66. Considering the totality of the circumstances, we conclude that the State failed to meet its burden to prove that Blackman voluntarily and freely consented to the blood draw under the Fourth Amendment. All things considered, Blackman's consent to the blood draw was not voluntary and free, and was not an unconstrained choice; it was the product of coercion, express or implied, and therefore was invalid under the Fourth Amendment.
¶ 67. Thus, the evidence obtained through the blood draw was the result of an unlawful search.
C
¶ 68. Ordinarily, evidence obtained through an unlawful search is excluded at trial. The exclusionary rule generally serves to "deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." Herring v. United States, 555 U.S. 135, 150-51 (2009). In State v. Dearborn, 2010 WI 84, ¶ 36, 327 Wis. 2d 252, 786 N.W.2d 97, the court stated the circumstance under which the exclusionary rule applies as follows:
*366 To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.
¶ 69. The State asks that the results of the blood draw in the instant case be admitted in evidence because Deputy Sheriff Abler acted in good faith.
¶ 70. Courts have applied the good faith exception and deviated from the exclusionary rule in only a few types of cases and in limited circumstances. The good faith exception has generally been applied when a law enforcement officer has reasonably and objectively relied on settled law (whether statute[23] or binding judicial precedent[24]) that was subsequently overruled or a warrant that was subsequently invalidated[25] or *367 that was based on erroneous information resulting from isolated police negligence attenuated from the arrest.[26]
¶ 71. The parties cite no case, and we have found none, applying the good faith exception to the exclusionary rule to a situation in which a law enforcement officer followed the requirements of a statute and gave an accused inaccurate information upon which the accused's coerced consent was based.
¶ 72. The State argues that Deputy Sheriff Abler's conduct and the Department's procedure complied with the statute; that a law enforcement officer cannot be expected to question a legislative enactment or Department procedure; that the exclusionary rule is not intended to deter the legislature; and that the exclusionary rule's deterrent effect on law enforcement conduct would not be served by suppressing the evidence of the blood draw in the instant case.
¶ 73. The State's argument is not persuasive. The error in the instant case is not an error attributable solely to the legislature. Nor does the instant case present an isolated or nonrecurring error in the criminal justice system. It evinces the potential of a "recurring or systemic" error, a widespread error, affecting the rights of an accused. The accused has a constitutional right under the Fourth Amendment, unless another exception to the warrant requirement exists, for law enforcement officers to obtain his or her free and voluntary consent to a blood draw or to obtain a search *368 warrant for the blood draw. Unless the evidence in the instant case is suppressed, law enforcement officers across the state will continue to read the Informing the Accused form to accuseds in the same situation as Blackman without providing correct information to provide the basis for the accused's voluntary consent.
¶ 74. The exclusionary rule's deterrent effect will be served if the evidence in the instant case is suppressed.
¶ 75. The application of the good faith exception to the exclusionary rule is not appropriate in the instant case. Accordingly, we conclude that the evidence of Blackman's blood test should be suppressed.
¶ 76. The dissent contends that Washburn County v. Smith, 2008 WI 23, 308 Wis. 2d 65, 746 N.W.2d 243, contravenes our holding that the misrepresentation in the Informing the Accused Form requires suppression of the evidence and that the good faith exception to the exclusionary rule does not apply in the instant case. The dissent errs. Smith is inapposite.
¶ 77. In Smith, unlike in the instant case, the information in the Informing the Accused Form was not challenged as incorrectly applying to the accused. Smith, 308 Wis. 2d 65, ¶¶ 65, 77.
¶ 78. The alleged misrepresentation in Smith was that the law enforcement officer gave additional information that was incorrect to the accused from whom a breath test (not a blood test) was requested. Smith, 308 Wis. 2d 65, ¶¶ 54, 78. The accused did not take the breath test and faced a refusal hearing.
¶ 79. The accused, who held a Louisiana driver's license, argued at the refusal hearing that the deputy gave him incorrect information about the penalties under Louisiana law and that therefore his refusal was *369 justified. The court was unconvinced by the accused's argument about Louisiana law. The court held that the Informing the Accused Form accurately stated Wisconsin law and that neither the deputy nor the accused believed that the deputy was stating Louisiana law. Smith, 308 Wis. 2d 65, ¶¶ 81, 82.
¶ 80. The accused also alleged that the deputy gave him an additional item of misinformation. Because no factual finding had been made about this allegation, the court assumed for purposes of its decision that the deputy misinformed the accused that he would be entitled to a refusal hearing within 10 days. Smith, 308 Wis. 2d 65, ¶ 84. The correct information was that the accused could request a refusal hearing within 10 days.
¶ 81. Under the applicable law at that time, in order to prevail, the accused in the Smith case had the burden to make a prima facie showing that the deputy's erroneous statement about the timing of the refusal hearing contributed to his refusal to submit to the breath test. Smith, 308 Wis. 2d 65, ¶ 86. The accused failed to make this essential showing. Accordingly, the court concluded that the accused improperly refused to submit to the breath test under the Implied Consent Law. Smith, 308 Wis. 2d 65, ¶¶ 87-89.
¶ 82. The Smith court did not address the driver's Fourth Amendment rights regarding a breath or blood test, the concept of voluntary consent under the Fourth Amendment, or the exclusionary rule. These issues were not raised in the Smith decision. The Smith case is not pertinent to the instant case.
* * * *
¶ 83. For the reasons set forth, we conclude that the State did not prove by clear and convincing evi *370 dence that Blackman's consent to the blood draw was valid, that is, that it was voluntarily and freely given under the Fourth Amendment.
¶ 84. Because the exclusionary rule's deterrent effect will be served by suppressing the evidence of Blackman's blood test, we decline to apply the good faith exception to the exclusionary rule. The results of Blackman's blood draw are therefore suppressed.
f 85. Accordingly, the cause is remanded to the circuit court to reinstate the order suppressing the evidence and for further proceedings not inconsistent with the decision of this court.
By the Court.—The decision of the court of appeals is reversed and the cause remanded.

 State v. Blackman, 2016 WI App 69, 371 Wis. 2d 635, 886 N.W.2d 94.

 All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

 Blackman presented three issues in his petition for review:
1. Whether the circuit court properly suppressed Mr. Blackman's warrantless blood test because he was unconstitutionally coerced into taking the test when he was read the informing the accused form which incorrectly told him that he faced a revocation and other penalties if he refused chemical testing, when he was actually only facing a possible arrest?
2. Whether the circuit court below properly suppressed Mr. Blackman's blood test where Mr. Blackman was unconstitutionally coerced into taking the blood test, under the totality of the circumstances, when he acquiesced to the unlawful assertion by the officer that they take blood samples in cases like his—in addition to being told that he faced a revocation and other penalties if he refused?
3. Whether Section 343.305(3)(ar)2. is unconstitutional on its face and as-applied because it coerces consent to otherwise unconstitutional searches without due process of law?
We need not and do not address the second and third issues presented. The second issue is substantially the same as the first issue. Our decision on the first issue is dispositive of the instant case. Accordingly, we need not and do not address the third issue challenging the constitutionality of Wis. Stat. § 343.305(3)(ar)2.

 The form is set forth verbatim in Wis. Stat. § 343.305(4).

 Wis. Stat. § 346.62(4).

 Wis. Stat. § 940.25(1)(a).

 Wis. Stat. § 940.25(1)(b).

 Wis. Stat. § 346.63(2)(a)1.

 Wis. Stat. § 346.63(2)(a)2.

 Blackman, 371 Wis. 2d 635, ¶¶ 16, 18 (Hagedorn, J., concurring).

 Upon a Wis. Stat. § 343.305(3)(ar)2. refusal, the person may be arrested, and asked to submit to a test under § 343.305(3)(a). A refusal under § 343.305(3)(a) will lead to revocation and "other penalties" under § 343.305(9)(a): "If a *353 person refuses to take a test under sub. (3)(a), the law enforcement officer shall immediately prepare a notice of intent to revoke . .. ."
. In discussing arrest in the instant case, the circuit court exclaimed: "The question of the century is arrested for what?"

 In 2009, the legislature added Wis. Stat. § 343.305(3)(ar)2. to the implied consent law. See 2009 Wis. Act 163. Prior to this Act, a law enforcement officer was authorized to request that a driver submit to a test only after the driver had been arrested for an OWI-related violation or the officer had probable cause to believe the driver was under the influence. See Wis. Stat. § 343.305(3)(a)-(b) (2006-07).

 Wisconsin Stat. § 343.305(3)(a) provides in relevant part:
[UJpon arrest subsequent to a refusal under par. (ar), a law enforcement officer may request the person to provide one or more *354 samples of his or her breath, blood or urine for the purpose specified under sub. (2). Compliance with a request for one type of sample does not bar a subsequent request for a different type of sample.
Wisconsin Stat. § 343.305(9)(a) provides in relevant part:
(9) Refusal; Notice and Court Hearing, (a) If a person refuses to take a test under sub. (3)(a), the law enforcement officer shall immediately prepare a notice of intent to revoke, by court order under sub. (10)....

14 We include this introductory material to demonstrate that the legislature requires a law enforcement officer to read the full text. We assume that the law enforcement officer did not read this introductory material to Blackman.

 Under Wis. Stat. § 343.305(10)(a), the circuit court shall revoke the driver's license only after it determines that the driver improperly refused to take a test or that the driver did not request a refusal hearing. Section 343.305(10)(a) provides:
(a) If the court determines under sub. (9)(d) that a person improperly refused to take a test or if the person does not request a hearing within 10 days after the person has been served with the notice of intent to revoke the person's operating privilege, the court shall proceed under this subsection. If no hearing was requested, the revocation period shall begin 30 days after the date of the refusal. If a hearing was requested, the revocation period shall commence 30 days after the date of refusal or immediately upon a final determination that the refusal was improper, whichever is later.

 Wisconsin Stat. § 343.305(4) pertains to reading the Informing the Accused form to the driver.

 The court of appeals seemed persuaded in the instant case that the legislature committed a drafting error. The court of appeals wrote: "The fact that Blackman could have prevailed at a refusal hearing due to the legislature's failure to amend the refusal hearing statute does not transform Black-man's freely given actual consent under Wisconsin's implied consent law into a coerced submittal." Blackman, 371 Wis. 2d 635, ¶ 12 (emphasis added).

 The Fourth Amendment to the United States Constitution provides:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

 Article I, Section 11 of the Wisconsin Constitution provides:
The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

 The State appears to argue that, under the implied consent law, all persons are deemed to have given actual consent to a blood draw when they operate a vehicle on a Wisconsin highway. The State does not argue, however, that law enforcement officers have the authority to compel drivers to submit to a blood draw without a warrant or an exception to the warrant requirement. The State acknowledges that drivers have a "statutory opportunity to withdraw [their] consent." Brief and Supplemental Appendix of Plaintiff-Appellant-Petitioner (State of Wisconsin) at 17. According to the State, a driver's choice when asked to submit to a blood test "is to submit and affirm the consent the person has already given, or refuse and withdraw that consent, and face penalties." Brief and Supplemental Appendix of Plaintiff-Appellant-Petitioner (State) at 10. Withdrawal of consent is not an issue in the instant case.

 See also Bumper v. North Carolina, 391 U.S. 543, 548-49 (1968): "[A] prosecutor [who] seeks to rely upon consent to justify the lawfulness of a search[ ] has the burden of proving that the consent was, in fact, freely and voluntarily given.").

 The prosecutor's question and the Deputy Sheriffs answer at the suppression hearing regarding whether Blackman was coerced into taking a blood test is as follows:
Q: [Prosecutor] ... Is there anything else you can tell me that would give us some information as to whether or not Mr. Black-man was forced or coerced or threatened in any way to consent to an evidentiary chemical test of his blood?
A: [Deputy Sheriff Abler] No, he was not. In fact he was very cooperative throughout the whole procedure.
The circuit court's questioning of the Deputy Sheriff about Blackman's taking a blood test is as follows:
Q: [The Circuit Court] Did you tell him why you were going to the hospital and why he should ride in your car?
*364 A: [Deputy Sheriff Abler] Well, I'm sure I told him that. I know I explained our normal procedure is when there is a serious accident like this that we do take blood samples.
Q: Okay. So he knew he was going to the hospital for a blood sample?
A: Yes, he did.
Q: Did he say anything to you about agreeing to have a blood sample and when you got in the car and before you guys took off to go to the hospital?
A: I don't know that he specifically agreed, but he did not disagree or refuse or give me any indication that he was going to refuse.

 Illinois v. Krull, 480 U.S. 340, 349-50 (1987).

 Davis v. United States, 564 U.S. 229, 241 (2011).

 Arizona v. Evans, 514 U.S. 1, 14 (1995); United States v. Leon, 468 U.S. 897, 918 (1984).
Although the court often interprets Article I, Section 11 of the Wisconsin Constitution in conformity with the interpretation of the Fourth Amendment, in State v. Eason, 2001 WI 98, ¶ 3, 245 Wis. 2d 206, 629 N.W.2d 625, the court adopted a "Leon-plus" good faith rule relying on Article I, Section 11 of the Wisconsin Constitution. The court concluded that this provision "guarantees more protection than the Fourth Amendment provides under the good faith exception as adopted in Leon:"
We hold that the good faith exception applies where the State has shown, objectively, that the police officers reasonably relied upon a warrant issued by an independent magistrate. The burden is upon the State to also show that the process used in obtaining the *367 search warrant included a significant investigation and a review by either a police officer trained and knowledgeable in the requirements of probable cause and reasonable suspicion, or a knowledgeable government attorney. (Emphasis added.)

 Herring v. United States, 555 U.S. 135, 137, 147-48 (2009).