COURT OF APPEALS
DECISION
DATED AND FILED

March 4, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1341-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CT246

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

JUSTIN DENNIS KRIZAN,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for St. Croix County: R. MICHAEL WATERMAN, Judge. *Affirmed*.

¶1 HRUZ, J.[1] Justin Dennis Krizan appeals from a judgment of conviction, entered upon his no-contest plea, to one count of operating a motor vehicle with a prohibited alcohol concentration (PAC), contrary to WIS. STAT.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

§ 346.63(1)(b), as a second offense. Krizan argues that the circuit court erred by denying his motion to suppress the results of a warrantless blood draw. Specifically, Krizan argues that law enforcement erroneously informed him that his operating privileges would be revoked if he refused to submit to the blood draw, thereby rendering Krizan's consent to the blood draw involuntary. For the reasons that follow, we disagree with Krizan and affirm the judgment of conviction.

## BACKGROUND

¶2      In August 2019, St. Croix County Sheriff's Deputy Forrest Henriksen was dispatched to investigate a two-vehicle head-on collision on a two-lane highway. When he arrived at the scene, Henriksen observed Krizan "halfway seated or laying inside" his vehicle complaining of shortness of breath; an inability to hear; and "bleeding from multiple areas of his body, including his head." Henriksen "detected a strong odor of intoxicant" coming from Krizan. Krizan was subsequently transported by helicopter to a hospital in Minnesota.

¶3      Deputy Henriksen also spoke to the driver of the other vehicle, who stated that he was driving northbound in his lane of travel when he observed Krizan's vehicle driving southbound in that same lane. The driver stated that he swerved to try to avoid Krizan's vehicle but was unsuccessful in avoiding the collision. Henriksen investigated the debris field around Krizan's vehicle and discovered a partially full alcoholic beverage container.[2] While Henriksen stated

---

[2] On cross-examination, Deputy Henriksen testified that the alcoholic beverage container was "opened in reverse to indicate that it was opened during the trauma of the crash" and that he did not give Krizan a ticket for having an open container of alcohol in a motor vehicle because he thought that the container was closed prior to the collision.

that he was investigating the crash as an operating a motor vehicle while under the influence (OWI) offense, he did not arrest Krizan at the accident scene due to Krizan's injuries and the immediate need for medical treatment.

¶4    Deputy Henriksen informed Deputy Anthony VanSomeren, also from the St. Croix County Sheriff's Department, of the facts surrounding the accident. Henriksen then told VanSomeren that there was probable cause to arrest Krizan for OWI, and he requested that VanSomeren obtain a blood sample from Krizan at the hospital. VanSomeren spoke to Krizan, informed him that he "had been placed under arrest for an OWI," read him the Informing the Accused form,[3] and requested that Krizan consent to providing a blood sample. VanSomeren stated that he "made sure" that Krizan was aware that he was being charged with OWI, but VanSomeren was "not sure" if he placed Krizan under arrest at that point.[4] Krizan agreed, and he did not object to the blood draw at any point. The blood draw revealed that Krizan had a blood alcohol concentration of 0.092g/100mL.

¶5    The State charged Krizan with one count of OWI and one count of operating a motor vehicle with a PAC, both as a second offense. Krizan moved to

---

[3] "[T]he Informing the Accused form is a script, required to be read by [WIS. STAT. § 343.305(4)], that provides information about the legal consequences of consenting to chemical testing and the legal consequences of refusing." *State v. Heimbruch*, 2020 WI App 68, ¶1 n.1, 394 Wis. 2d 503, 950 N.W.2d 916. The purpose of this form is to "advise the accused about the nature of the driver's implied consent" under Wisconsin's implied consent law. *State v. Piddington*, 2001 WI 24, ¶17, 241 Wis. 2d 754, 623 N.W.2d 528.

[4] One of the issues that arose at the suppression hearing was whether Deputy VanSomeren had the authority to place Krizan under arrest in Minnesota and whether VanSomeren did, in fact, place Krizan under arrest. The circuit court concluded that Krizan was not actually placed under arrest at the hospital and, therefore, it did not need to decide whether VanSomeren had the authority to place Krizan under arrest. This issue is not material to our analysis.

suppress the results of his blood draw, arguing, among other things, that his consent was not voluntary due to the injuries that he received in the accident.

¶6 At the suppression hearing, Deputies Henriksen and VanSomeren testified to the facts set forth above, and VanSomeren's body camera footage was admitted into evidence. After briefing, the circuit court issued an oral ruling, finding that Krizan was not in police custody at the hospital and, therefore, was not placed under arrest at the time of his consent. The court then found that, while VanSomeren did not have a warrant to obtain Krizan's blood, VanSomeren had grounds to read Krizan the Informing the Accused form and to request a sample of his blood.

¶7 Specifically, the circuit court noted that WIS. STAT. § 343.305(3) provides three situations in which law enforcement may request a blood sample, one being that the operator of a vehicle causes great bodily harm to any person and law enforcement detects any presence of alcohol. *See* § 343.305(3)(ar)1. The court found that the accident had caused Krizan to suffer a serious bodily injury in the form of partial loss of hearing, Deputy Henriksen detected the odor of alcohol on Krizan, and alcohol was found at the scene of the accident.[5]

¶8 The circuit court also found that Deputy VanSomeren inaccurately informed Krizan at the hospital that he was under arrest, but it concluded that this inaccurate statement did not render Krizan's consent involuntary, as there was no evidence that Krizan relied on that statement when he consented to the blood draw. The court also found that Krizan's hearing impediment did not invalidate

---

[5] The circuit court did not make note of the fact that Krizan was bleeding from multiple areas of his body, including his head.

his consent to the blood draw. Rather, the body camera footage showed VanSomeren and Krizan interacting with each other, VanSomeren spoke loudly and repeated himself when asked, and Krizan personally read the Informing the Accused form. The court also found that Krizan heard and understood the request for a blood draw because he stated, "I comply with taking a blood result." Accordingly, the court denied Krizan's suppression motion.

¶9      Krizan then wrote a letter to the circuit court, which the court construed as a motion for reconsideration. In the letter, Krizan argued that his consent was involuntary under *State v. Blackman*, 2017 WI 77, 377 Wis. 2d 339, 898 N.W.2d 774. The State responded that *Blackman* did not apply to Krizan's situation. The court denied Krizan's motion on the basis that the circumstances of his accident were materially distinguishable from those in *Blackman*.

¶10      Krizan subsequently pled no contest to the PAC charge.[6] The circuit court found that Krizan entered this plea freely, voluntarily, and intelligently, and it accepted his plea. The court ordered that Krizan serve ten days in jail, that his driver's license be revoked for one year, that an ignition interlock device be installed in his vehicle for one year, and that Krizan pay the minimum fine of $350, as well as "court costs and other surcharges that get added on top of that." Krizan now appeals.

---

[6] Pursuant to WIS. STAT. § 346.63(1)(c), the OWI charge was dismissed after Krizan's no-contest plea to the PAC charge.

## DISCUSSION

¶11 Krizan argues that Deputy VanSomeren provided false information to him when reading the Informing the Accused form and that this false information rendered his consent to the blood draw involuntary. Specifically, Krizan argues that VanSomeren mistakenly informed him that his license would be revoked if he refused to provide a blood sample.

¶12 "Our review of an order granting or denying a motion to suppress evidence presents a question of constitutional fact." *Blackman*, 377 Wis. 2d 339, ¶25 (citation omitted). "[W]e will uphold the circuit court's findings of fact unless those findings are clearly erroneous," and "we conduct an independent, de novo analysis of the application of constitutional principles to the facts found." *Id.* Our review also requires us to interpret WIS. STAT. § 343.305. Statutory interpretation and application are questions of law that we review de novo. *Blackman*, 377 Wis. 2d 339, ¶26.

¶13 "The Fourth Amendment to the United States Constitution and [a]rticle 1, [s]ection 11 of the Wisconsin Constitution protect persons from unreasonable governmental searches and seizures. In general, our cases have ordinarily construed the search and seizure protections of the state and federal constitutions coextensively." *State v. Johnson*, 2007 WI 32, ¶20, 299 Wis. 2d 675, 729 N.W.2d 182. "The Fourth Amendment ordinarily requires a search warrant for a blood draw unless one of the exceptions to the warrant requirement exists." *Blackman*, 377 Wis. 2d 339, ¶4. One such exception applies, in this particular context, when "consent to the blood draw was given freely and voluntarily." *See id.*

¶14    "Wisconsin has passed an implied consent law, which is designed to facilitate the gathering of evidence to remove drunk drivers from the road." ***State v. Prado***, 2021 WI 64, ¶20, 397 Wis. 2d 719, 960 N.W.2d 869.  "When a law enforcement officer requests a specimen pursuant to the implied consent law, the officer is required to read to the suspect the 'Informing the Accused' form," which "is 'designed to inform drivers of the rights and penalties applicable to them.'" ***Id.***, ¶22 (citation omitted).

¶15    In ***Blackman***, our supreme court ruled that the Informing the Accused form contains a misrepresentation of the implied consent law, and that this misrepresentation rendered the defendant's consent involuntary under the Fourth Amendment.  ***Blackman***, 377 Wis. 2d 339, ¶¶38, 51.  In that case, a deputy requested that the defendant—who *was not* suspected of operating his vehicle while intoxicated—submit to a blood draw under WIS. STAT. § 343.305(3)(ar)2., and read him the Informing the Accused form.  ***Blackman***, 377 Wis. 2d 339, ¶¶30, 37.  However, the language in the form differed from the applicable statutory language.  ***Id.***, ¶38.  Specifically, the form stated that "if a driver refuses to take any test under § 343.305(3)(ar)2., the driver's 'operating privilege *will* be revoked' and the driver '*will* be subject to other penalties,'" whereas the statute stated only that "if a driver refuses to take any test under § 343.305(3)(ar)2., the driver may be arrested."  ***Blackman***, 377 Wis. 2d 339, ¶38.

¶16    Our supreme court then noted that a driver *who is not suspected of a drunk-driving offense* could refuse to submit to a blood test under WIS. STAT. § 343.305(3)(ar)2., could request a refusal hearing under § 343.305(9)(a)5.a., would prevail at the refusal hearing and not have his or her operating privilege revoked.  ***Blackman***, 377 Wis. 2d 339, ¶¶5, 38.  Thus, the court stated that the

proper advice to the defendant "was that his operating privilege *would* be revoked if he failed to request a refusal hearing." *Id.*, ¶38.

¶17 Krizan cites *Blackman*, arguing that he was similarly misinformed by the Informing the Accused form and that his consent was therefore involuntary. Krizan misapprehends our supreme court's holding in *Blackman*, at least as applied to the circumstances of this case. Rather, our decision is guided by this court's recent decision in *State v. Gore*, 2025 WI App 11, ___ Wis. 2d ___, ___ N.W.3d ___.

¶18 In *Gore*, the defendant, similar to Krizan, argued that he was misinformed by an officer's reading of the Informing the Accused form and that this misinformation rendered his subsequent consent to provide a blood sample involuntary pursuant to *Blackman*. *Gore*, 2025 WI App 11, ¶¶11-13. We rejected the defendant's argument due to his case being materially distinguishable from *Blackman*. *Gore*, 2025 WI App 11, ¶29. Specifically, we concluded that "*Blackman* is limited to situations in which an officer read a driver the Informing the Accused form under WIS. STAT. § 343.305(4) but did not suspect the driver of being under the influence of alcohol." *Gore*, 2025 WI App 11, ¶29. We concluded that the officer had probable cause to believe that the defendant operated his vehicle under the influence of alcohol and, thus, that the officer's

reading of the Informing the Accused form did not render the defendant's consent involuntary.[7] *Id.*

¶19    Deputy VanSomeren asked Krizan to submit to a blood draw under WIS. STAT. § 343.305(3)(ar)1., which provides, in pertinent part:

> If a person is the operator of a vehicle that is involved in an accident that causes substantial bodily harm, as defined in [WIS. STAT. §] 939.22(38), to any person, and a law enforcement officer detects any presence of alcohol, a controlled substance, a controlled substance analog or other drug, or a combination thereof, the law enforcement officer may request the operator to provide one or more samples of his or her breath, blood, or urine for the purpose specified under sub. (2).… If a person refuses to take a test under this subdivision, he or she may be arrested under par. (a).

¶20    In identifying WIS. STAT. § 343.305(3)(ar)1. as the pertinent subdivision, the circuit court noted that: (1) Krizan suffered from a serious bodily injury as defined by WIS. STAT. § 939.22(38) due to his hearing loss;[8] (2) nothing in § 343.305(3)(ar)1. requires that the serious bodily injury be to a third party; (3) Deputy Henriksen detected an odor of alcohol on Krizan; and (4) an alcoholic beverage was found in the debris around Krizan's vehicle. Krizan does not argue that any of those findings are clearly erroneous.

---

[7] Krizan's appeal differs slightly from *Gore*, 2025 WI App 11, in that the officer in *Gore* sought to obtain a blood sample from the defendant under WIS. STAT. § 343.305(3)(ar)2., whereas Deputy VanSomeren sought to obtain a blood sample from Krizan under § 343.305(3)(ar)1. *See Gore*, 2025 WI App 11, ¶29. This difference, however, does not change our analysis. Like the officer in *Gore*, VanSomeren had probable cause to believe that Krizan had operated his vehicle under the influence of alcohol. *See id.*, ¶4. Therefore, *Blackman* does not apply, and Krizan's consent was not rendered involuntary.

[8] WISCONSIN STAT. § 939.22(38) provides: "'Substantial bodily harm' means bodily injury that causes a laceration that requires stitches, staples, or a tissue adhesive; any fracture of a bone; a broken nose; a burn; a petechia; a temporary loss of consciousness, sight or hearing; a concussion; or a loss or fracture of a tooth."

¶21 Unlike the applicable subdivision of WIS. STAT. § 343.305 in *Blackman*, § 343.305(3)(ar)1. *does* apply to a drunk-driving offense, as it requires law enforcement to detect the presence of alcohol. *Cf. Blackman*, 377 Wis. 2d 339, ¶5; § 343.305(3)(ar)1. Further unlike *Blackman*, Deputy VanSomeren had probable cause to believe that Krizan was operating a motor vehicle while under the influence, due to Deputy Henriksen's detection of the odor of alcohol on Krizan and the fact that an alcoholic beverage was located at the scene of the accident. *Cf. Blackman*, 377 Wis. 2d 339, ¶5.

¶22 Finally, unlike the defendant in *Blackman*, Krizan *would* have had his driving privileges revoked if he refused to submit to a blood test. Pursuant to WIS. STAT. § 343.305(9)(a), Krizan could have refused to submit to the blood test and requested a refusal hearing. The refusal hearing would have been limited to the following issues:

> a. Whether the officer had probable cause to believe the person was driving or operating a motor vehicle while under the influence of alcohol, a controlled substance or a controlled substance analog or any combination of alcohol, a controlled substance and a controlled substance analog, under the influence of any other drug to a degree which renders the person incapable of safely driving, or under the combined influence of alcohol and any other drug to a degree which renders the person incapable of safely driving, having a restricted controlled substance in his or her blood, or having a prohibited alcohol concentration ….
>
> b. Whether the officer complied with sub. (4).
>
> c. Whether the person refused to permit the test….

Sec. 343.305(9)(a)5.a.-c.

¶23 As stated above, Deputy VanSomeren did have probable cause to believe that Krizan was operating a motor vehicle while under the influence of

10

alcohol. Further, Krizan concedes that VanSomeren complied with WIS. STAT. § 343.305(4), which requires a law enforcement officer to read the Informing the Accused form to the person from whom the test specimen is requested. Thus, if Krizan had refused to provide the blood sample, the circuit court would have found that Krizan's refusal was improper and would have subsequently revoked Krizan's operating privileges. *See* § 343.305(10); *see also Gore*, 2025 WI App 11, ¶29. Accordingly, VanSomeren's reading of the Informing the Accused did not render Krizan's consent to the blood draw involuntary.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.